GULFPORT & MISSISSIPPI COAST TRACTION CO. *v.* FAULK.

[80 South. 340, Division A.]

1. PRINCIPAL AND AGENT. *Authority of agent.*
   The authority of an agent to bind his principal rests upon the powers conferred upon him by his principal.

2. PRINCIPAL AND AGENT. *Proof of relation.*
   The authority of an agent cannot be proven by the mere statement of the agent.

3. MASTER AND SERVANT. *Liability of master. Authority of employee.*
   The assumption of the authority of one servant to control another and the acquiescence by the second servant to this control, does not render the employer liable in the absence of authority conferred upon the servant by the master.

4. MASTER AND SERVANT. *"Volunteer." Liability of master.*
   Where a servant does the work of another servant which he was not employed, or expected to do, he is a mere "volunteer" and for injuries sustained while doing such work, he cannot recover.

APPEAL from the circuit court of Harrison county.

HON. J. H. NEVILLE, Judge.

Suit by W. W. Faulk against the Gulfport & Mississippi Coast Traction Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*White & Ford,* for appellant.

We respectfully contend: 1. That this was no jury case; 2. It was no part of Faulk's business to crank the Ford. He was a mere volunteer. Chambers did not order him to do so, and if so, Chambers had no authority whatever to tell him to do so, and Faulk could have disregarded the order. It was no "place to work" and was no appliance furnished Faulk. 3. He voluntarily undertook to "spin" the Ford, choosing the wrong way. There could be no duty to warn him how to do a thing he was not supposed to do.

As to the proposition that appellant should have been given a peremptory instruction, it is nowhere shown by any testimony that Faulk was given the car to work with or that it was any part of his duty to crank it. He says he "guessed" Mr. Gorenflo put him under Chambers, and in the same breath admitted that he did not know whether he was under Chambers or not. He says Chambers told him he was under him. If appellant can thus be bound, lets see where it would lead. An employer might hire two men, both in the same capacity, neither having authority over the other; one would inform the other that he was boss and his orders must be obeyed, the employer having no knowledge of any such orders, and in complying with one of the orders so given, the employee taking the order was hurt. Certainly the employer is not bound. It will be noted Faulk does not testify that Gorenflo told him he was under Chambers, but the only testimony of Chambers' authority is what Chambers himself told Faulk as to the extent of his powers.

"It appears to be well settled in law in all jurisdictions that the authority of the agent to bind the principal rests upon the powers conferred upon him by his principal." *Milling Co.* v. *Phillips,* 78 So. (Miss.) 6. "The statement of an agent as to his agency has no probative value." *Simrall* v. *Kitselman,* 101 Miss. 783.

In *McMillan* v. *Mining Co.,* 11 L. R. A. (N. S.) 840, a West Virginia case, the facts were that plaintiff was employed to load coal in cars in a mine and that he was working with an Italian who used dynamite in shooting down coal; that plaintiff had nothing to do with shooting down coal and had no experience with dynamite and knew nothing of its dangerous propensities. The mine boss directed him to get some dynamite caps and take them to the Italian. He got the caps and they exploded. He claimed that he knew nothing of the danger of dynamite and that he should have been warned of its danger and should have been instructed how to handle it, but the mine boss failed so to do. Plaintiff claimed that he was taken from his usual business of loading and put to another and different and more dangerous occupation, and this made it incumbent upon the company to warn him. The court said there was nothing in the case. It will be noted that every claim made in this case to try to make a case was made in the McMillan case. "The mere assumption by an employee of a power to control his fellows, without a delegation of such power by the employer, will never render the employer liable for the orders of such subordinate, and if an employee sees fit to recognize such self-constituted authority, he assumes the risk of obedience, or should look to such employee for redress. Citing authorities."

The case then went on to say that McMillan and the mine boss are fellow servants anyway, and it is elementary that the right of one to direct does not divest him of the character of a fellow servant. "The nature of the work and not the rank of the so-called vice-principal governs." *Pasco Co.* v. *Company,* 18 L. R. A. (N. S.)

153, 54 L. R. A. 33; *Newbury* v. *Getchel Mfg. Co.,* 62 Am. St. Rep. (Iowa) 582.

"Where two servants of a common master are employed upon the same work and one of them, without any authority from his employer, directs the other to use a machine for a dangerous and improper purpose for which it was not intended or provided, and he complies, and thereby receives an injury, the employer will not be held liable." *Fletch* v. *Allen,* 98 Mass. 572, 34 Cent. Dig. (M. & S.) 290.

In short, this case is one of those "strained efforts to create liability where none exists," as said by the court in *Ragland* v. *Native Lbr. Co.,* 117 Miss. 602.

We respectfully submit the case shall be reversed and dismissed.

*Mize & Mize,* for appellees.

The contention counsel for appellant makes as to peremptory instruction is that Faulk was a volunteer and not working within the scope of his employment. We submit that the evidence does not justify any such contention. The proposition that when a servant is injured while in the real or apparent scope of his authority he is entitled to recover, needs no citation of authority nor do the other propositions that the master owes the servant the duty to warn him and to furnish him with reasonably safe appliances.

Under the facts as they existed in this case, and as shown by the record, Faulk had the absolute right to assume that he was under Chambers' orders. He was put as assistant to this man who had general charge of the department of trouble; he was told by Gorenflo that he was put there as assistant; he was taken from his former work as lineman and put to help this trouble shooter; Chambers was the man who had charge of that department; Faulk was not told by Gorenflo that he was not under Chambers' orders and did not have to obey

Chambers' orders, but he was taken by Gorenflo from his former work as lineman and told he was assistant trouble shooter. The evidence of Gorenflo himself discloses that Chambers was trouble shooter and that he put Faulk to assist him and that they both had the right to use the automobile when they were working together.

We submit that the case has been heard by the jury on all of the evidence and proper instructions and that the evidence discloses that he was injured by reason of a short circuit and by reason of not having been properly warned, because, if he had been warned how to use the crank and that he should pull up on the handle, instead of pushing down, he probably would not have been injured even if there was a short circuit caused by a grounded wire; and therefore, we submit that this case should certainly be affirmed.

Sykes, J.—delivered the opinion of the court.

W. W. Faulk sued the appellant traction company in the circuit court for damages on account of personal injuries sustained by him. The first count of the declaration alleges that the master failed to furnish him with a reasonably safe place in which to work, and with reasonably safe appliances with which to work, in the scope of his employment. The second count alleges that plaintiff was an inexperienced man in the handling of automobiles and knew nothing about running one or the dangers incident to cranking one; that it was his duty to obey the orders of one Chambers, who was his foreman; that he was injured while attempting to crank a Ford automobile in response to an order to do so from this foreman; that he was inexperienced and did not know of the danger attached to cranking a car; that it was negligence on the part of the defendant to order him to crank the car without warning him of the dangers incident thereto.

The testimony in the case shows that appellee had been employed by appellant as a lineman in its service; that his duty was to work upon repairs and construction of the property of appellant; that shortly before the injury here sued for he was instructed by the general manager of appellant to do work known as "trouble shooting;" that Sam Chambers was the regular "trouble shooter;" that this work was somewhat different from his regular work as lineman. On direct examination, he testified that he was put on this work to assist the "trouble shooter," Sam Chambers; that he was subject to Sam Chambers' orders when he was hurt. On cross-examination, he was asked why he was compelled to obey Chambers' orders, to which he replied:

"Because Mr. Gorenflo (the general manager) put me with him. Q. He didn't put you under him? A. He put me to do what he said, I guess, because he was trouble shooter. Q. How do you know you were under Sam's orders? A. He told me I was. Q. Who told you? A. Sam. I was working under him. Mr. Gorenflo put me under him. Q. Mr. Gorenflo never told you that you were under Sam? A. He put me with him; I didn't know anything about the trouble work."

This is practically all of the testimony of the appellee as to Chambers being his superior. The substance of this testimony is simply that he, the appellee, inferred that Chambers was his superior because Chambers had been working in this department for a longer period than appellee and knew more about it, and also that Chambers told appellee he was under him. The general manager, Mr. Gorenflo, testified that these two men assisted each other in this work; that neither had to obey the orders of the other with reference to the work; that they were given their orders about the work at the office; that as a matter of fact appellee was paid more wages than Chambers.

The facts relating to the injury are as follows: The appellant company furnished a Ford automobile to Chambers in order that he might be able to ride up and down the line of appellant and attend to his duties as trouble shooter. That Chambers was an experienced chauffer, and it was his duty under the contract to repair and keep in condition and look after this Ford automobile. That the appellee, Faulk, sometimes had work to do by himself, and that he was furnished with a pass over the street car line of appellant. That he was sometimes sent out to do work with Chambers. When he went with Chambers, he rode in the automobile. That appellee had nothing whatever to do with cranking or running the automobile, but that this was solely intrusted to Chambers. Appellee and Chambers had been out doing some work together. They rode out in the automobile, Chambers driving. After they finished the work, Chambers got in the car and said, "Let's go." Appellee then attempted to crank the automobile, and in doing so was kicked by the crank lever and his arm broken. The testimony of Chambers is that the car kicked because of some grounded wires which had come in contact with the fan belt and the insulation had been knocked from the the wires. The appellee testified that he knew nothing about the automobile and only cranked it when he was ordered to do so by Chambers; that he understood Chambers' conduct at the time of the injury to be equivalent to an order to him to crank the automobile.

From a judgment in favor of appellee for five hundred dollars, this appeal is prosecuted.

The peremptory instruction asked by appellant should have been given. There was no testimony whatever to show that Chambers was a superior agent of the appellee or had the right to direct or control his services. They were merely fellow servants of equal dignity. It is well settled that the authority of an agent to bind his principal rests upon the powers conferred upon him by the

principal. *Milling Co.* v. *Phillips,* 117 Miss. 204, 78 So. 6.

This authority of the agent cannot be proven by the mere statement of the agent. *Sumrall* v. *Kitselman Bros.,* 101 Miss. 783, 58 So. 594,

The assumption of the authority of one servant to control another, and the acquiescence by the second servant to this control, does not render the employer liable in the absence of authority conferred upon the servant by the master. This rule, quoted from White, Personal Injuries, section 222, in the case of *McMillan* v. *Mining Co.,* 61 W. Va. 531, 57 S. E. 129, 11 L. R. A. (N. S.) 840, is as follows:

"The mere assumption by an employee of a power to control his fellows,. without a delegation of such power by the employer, will never render the employer liable for the orders of such subordinate; and, if an employee sees fit voluntarily to recognize such self-constituted authority, he assumes the risk of obedience, or should look to such employee for redress."

It was no part whatever of appellee's duties to crank or have anything whatever to do with this automobile except to ride in it. In attempting to crank it he was a mere "volunteer," and the appellant is not responsible for his injury.

Reversed, and judgment here for appellant.

*Reversed.*