CAPE COUNTY SAVINGS BANK ET AL *v.* GWIN LEWIS . GROCERY CO. ET AL.

[86 South. 275.   Nos. 20965, 20995.]

1. PRINCIPAL AND AGENT. *Agent's power limits his authority to bind principal.*
   The authority of an agent to bind his principal rests upon the powers conferred upon him by the principal.

2. PRINCIPAL AND AGENT. *Agent's authority cannot be proved by his statement.*
   The authority of an agent cannot be proved by the mere statement of the agent.

3. PRINCIPAL AND AGENT. *Traveling salesman cannot make absolute contract of sale.*
   Unless expressly authorized by his principal, a traveling salesman or "drummer" has authority only to solicit orders and transmit the same to his principal for approval, and may not make an absolute contract of sale.

APPEAL from chancery court of Holmes county.

HON. Z. A. BRANTLEY, Special Chancellor.

Suit by the Gwin Lewis Grocery Company against the Cape County Milling Company and the Cape County Savings Bank and others. Decree for the Grocery Company, and the Milling Company and the Bank and others separately appeal, and the appeals were consolidated. Reversed, and bill dismissed.

*E. F. Noel,* for appellants.

1.  According to his own evidence, and to the answer of the Cape County Milling Company duly sworn to and to the depositions of its alleged agent, J. D. Welch and of the president and manager of the Leflore Grocery Company, Welch was a mere drummer, and according to the evidence of all these except Weaver, he had no authority to sell except on confirmation, and therefore the rejection

of the order of the drummer Welch was authorized, and avoided all liability, as was held by this court in *Becker* v. *Clardy,* 96 Miss. 301, 309, 51 So. 211, where this court said salesman or 'drummer' has authority only to solicit orders: "Unless expressly thereunto authorized, a traveling salesman or 'drummer' has authority only to solicit orders and transmit the same to his principal for approval, and may not make an absolute contract of sale."

"Where defendant rejects within a reasonable time an order for goods and offered to return the amount of the check sent by plaintiff with the order, the collection of the check upon its receipt with the order did not of itself amount to an acceptance of the order."

2.    The authority of an agent cannot be established by the unsupported declarations of the agent, nor by his acts. *M. & V. R. R. Co.* v. *Cocke,* 64 Miss. 715, 714, 716; Therrell v. *Ellis,* 85 Miss. 494, 498-297. The damages were excessive and should have been reduced. 48 R. C. L., Pr. 442-5.

3.    The authority of the agent to bind his principal rests on the power conferred upon him by the principal. *Gulfport, Mississippi Traction Co.* v. *Faulk,* 80 So. 3440.

4.    "Those who deal with an agent or supposed agent must learn the scope of his agency, as to which they ast at their peril." *Busby* v. *Y. & M. V. R. R. C.,* 90 Miss. 13, 16.

5.    The uncontradicted evidence of the cashier of the Cape County Saving Bank, Alvin A. Boss, clearly and uncontradictedly established, that the Cape County Savings Bank purchased and paid for the one thousand nine hundred twelve dollars and twenty-five cents draft which was collected and held by the Merchants and Farmers Bank & Trust Company and garnished and condemned in this case.

6.    The record in this case shows that the Merchants and Farmers Bank & Trust Company, garnishee, collected this draft of one thousand nine hundred twelve dollars and twenty-five cents before the institution of this suit, did not put it into court, but mixed it with their general funds, and have kept it ever since, and should be charged

with legal interest thereon and a decree rendered against it in favor of appellant, the Cape County Savings Bank.

*H. H. Elmore,* for appellees.

We are very well aware of the authority usually possessed by that class of salesmen usually and commonly known as drummers.   But the common acceptation of the term "drummer" denotes "commercial agents who are traveling for wholesale merchants, and supplying the retail trade with goods, or rather taking orders for goods to be shipped to the retail merchant." *State* v. *Miller,* (N. C.), 53 Am. Rep., 470; 6 Am. & Eng. Ency. L. (2 Ed.), 223; 14 Cyc., 1087.

In the present case, Welsh was not representing a wholesale merchant.   He was representing a manufacturer. Welsh was not selling to the retail merchants.   He was selling to wholesalers.   It is true that the salesman in *Becker Co.* v. *Clardy,* 69 Miss. 307, the Becker Company, was engaged in the manufacture of soda fountains; but Clardy was a druggist in Starksville, evidently only a retailer, and in fact the ultimate consumer with regard to the soda fountain.

"Parties dealing with an agent have a right to presume that his agency is general and not limited, and the presumption is that one known to be an agent is acting within the scope of his authority." *Austrian & Co.* v. *Springer,* 34 Am. St. 353; *Trainor* v. *Morrison,* 57 Am. Rep. 791.

"Third persons dealing with an agent have the right to presume that his agency is general in the absence of notice to the contrary." 31 Cyc. 1639.   It is specifically charged in the bill of complaint that Welsh was the "state agent" of the milling company.   It is nowhere denied in the answer that he was such and entitled to wear that title.

Welsh's conduct at the time when no suit was pending and the conduct of the Milling Company since the suit was filed, favor the contention that he had full authority.   But

irrespective of the questions above, briefly discussed, we are entitled to have this case affirmed.

The decision of the case was mainly on questions of fact. The burden was on appellants to show that the decision was manifestly and obviously wrong, as all presumptions in favor of the correctness of the decree are strong in our favor. We now ask the attention of the court to Exhibit 9 to the testimony of Morris Lewis, being a letter from the Gwin Lewis Grocery Company to the Cape County Milling Company; to Exhibit 10 to the testimony of the same witness, being a letter from the Cape County Milling Company to the Leflore Grocery Company; also Exhibits 11, 12, 13, and 15 to the testimony of the same witness, being correspondence by letter and telegrams between appellees and the Milling Company. None of these exhibits are in the record. They were material testimony in the case. They were read in evidence before the chancellor. How can the court pass on the correctness of his finding if the court has not before it all the evidence which was offered before him? It not only cannot do so, but will not try; for, is it not written that "a question depending upon the evidence for determination cannot be reviewed by this court unless it has before it all of the evidence upon which it was decided by the court below, which fact must affirmatively appear from the record. *Board of Supervisors* v. *Banks,* 80 So. 530; *Miss. Oil Co.,* v. *Blaker,* 20 So. 156; *Wilson* v. *Brown,* 94 Miss. 608. For the same reason, questions raised about the admissibility of the testimony cannot be considered.

We therefore respectfully ask an affirmance of these cases.

*Booth & Pepper,* for appellees.

Appellants, who were defendant in the court below, presented the following defenses to the suits in the court below, and renew same here. First: The Cape County Milling Company, in its original answer and cross-bill, set up

one defense as follows:    (a)    That J. D. Welsh, State
Agent for the Cape County Milling Company, had no
authority to make a binding contract for the sale of flour,
that all contracts had to be confirmed by them, and they
refused to confirm the contracts in question.

The proof clearly shows that J. D. Welsh with head-
quarters at Edwards House, Jackson, Mississippi, held
himself out as   state agent for Mississippi for the Cape
County Milling Company, and so signed all orders and
contracts for the sale and purchase of flour by him for
the Cape County Milling Company, to customers in Miss-
issippi, "including appellees, Cole-Baker Company, of
Durant, Mississippi, and others; that he was permitted by
the Cape County Milling Company to so solicit orders
for flour in the state of Mississippi, and to execute and
deliver contracts of sale for and on behalf of Cape County
Milling Company, and signed his name as J. D. Welsh,
State Agent for Mississippi, for the Cape County Milling
Company, of Jackson, Mississippi.   The agency and author-
ity of J. D. Welsh was never questioned by Cape County
Milling Company to sign his name to all orders and con-
tracts of sale, as J. D. Welsh, state agent, and no attempt
so far as the evidence discloses was made by the Cape
County Milling Company to limit the authority of their
state agent in Mississippi, to the mere solicitation of or-
ders, but on the contrary he was permitted to hold him-
self out as the State Agent of the Cape County Milling
Company in Mississippi, and to sign orders; and further
when appellees desired on the 29th day of August, 1916,
a short time after the Cape County Milling Company had
refused to carry out his contracts sued on in this case, to
ascertain the market price of flour on that date for the
very purpose of establishing their actual losses on ac-
count of the failure of the Cape County Milling Company
to comply with its contracts, they wired the Cape County
Milling Company for prices of the same grades of flour orig-
inally contracted for. The Cape County Milling Company
did not give them the information desirel, but wired appel-

lees that their Mr. J. D. Welsh of Jackson, Mississippi, would submit and furnish the information and prices of flour desired and asked for, which information Mr. Welsh so furnished the Gwin Lewis Company and which information was used as the basis for this suit, along with similar information obtained direct from other mills selling the same grades of flour. Consequently, it is perfectly evident that Mr. J. D. Welsh was authorized to represent the Cape County Milling Company as their state agent in Mississippi and to furnish quotations and to make contracts in behalf of the Cape County Milling Company, a corporation, which could only speak through its agents and act through its agents.

Our court in a case very similar, in fact on all fours with the cases here before the court, said: "We are of the opinion that the plaintiff made out a good cause of action against the defendant and that the peremptory instruction for the defendant was error. The authority given to Potts by the Springfield Milling Company to sell its flour to all persons wishing to purchase, constituted him its general agent in that business (Story, Agency, sec. 17); and in all cases of general agency the principal is bound by the acts of his agents within the scope of the authority conferred on him, although he violated his instructions limiting or qualifying the exercise of such authority. Story on Agency, sec. 126. Potts, as the Salesman of the defendant Milling Company, had an unquestionable right to give Porter a sale note of the bargain, and this was proper to be done in this instance, in order to satisfy the statute of frauds, for an authority conferred upon an agent includes all necessary and usual means of executing with effect. Story on Agency, sec. 58.

The contract of Potts with plaintiff to sell him one hundred barrels of flour was binding upon the defendant company and the reservation by the defendant company of power to reject the orders of Potts was inoperative as to all persons not cognizant of such reserved authority, and whatever loss was sustained by the plaintiff by reason

of the neglect of the defendant to fulfil such contract, and which loss could not have been reasonably avoided by the plaintiff, he is entitled to recover in this action." *Potter* v. *Springfield Milling Co.,* 75 Miss. 532.

It will therefore be observed by the court that in the case of *Potter* v. *Springfield Milling Co.,* that the exact line of testimony by way of defense was introduced by the Milling Company in fact, the purchaser in that case even reserved the right to cancel the order, and the agent of the Milling Company swore that he had no authority to give a binding contract or make a binding sale, and that the memorandum that he gave of the sale to the purchaser was only made for his own convenience, and that everything he did was without force and effect until ratified by his principal.

The case at bar and now under discussion is much stronger than the Potter case above set forth, for Welsh held himself out, not only to the business and buying public that he was state agent of the Cape County Milling Company but furnished by them with stationery, consisting of order blanks on which he took orders signing his name as state agent, that is agent of the Cape County Milling Company for the state of Mississippi, a given territory, and so far as the evidence shows his agency and authority was never questioned, until after the making with appellees of the contracts now before the court.

The flour in the Potter case and in these cases now before the court was sold by the Milling Company for resale to distributees.   In the instant cases wholesale grocery companies, who bought and sold flour against sales and purchases, which they had to do to protect their margin of profit, all of which was thoroughly understood by the Milling Company, in the instant cases, who was immediately notified by J. D. Welsh, state agent, but who took no steps to advise appellees direct that they would not stand by their contracts until more that seven days had expired, and after that until the 29th of August, 1916, when the suit was instituted, efforts were still being made

by appellees to have the Cape County Milling Company to fill its contracts.

If the Potter case does not correctly state the law in Mississippi, on sales of such article of Commerce, as flour, meat and meal and similar staple articles bought and sold by wholesale grocers, in large quantities through traveling representatives of Milling Companies, packers, and other manufacturers, for immediate release, in many instances sold the very day orders are given to the manufacturer, then, they would have to cease doing business with travelling representatives of the manufacturer and deal direct with travelling representatives of the manufacturer. In other and in some instances at very distant and remote points, Welsh was no mere soliciting drummer, but he was the state agent of a Foreign Corporation, placed here for the purpose of selling flour for his principal, an article which varied in price each day, and in the instant cases constantly advanced in price from the date of the execution of the orders sued on until the trial of the cases and the rendition of the decree appealed from. Any other rule of law as to the validity of such contracts of sale of such commodities by the manufacturer's agent to the wholesale distributer or jobber would disrupt the wholesale business in Mississippi, for these wholesale concerns also, their travelling representatives, who each day are reselling flour so purchased for present and future delivery; in other words the most vital link in the chain of commercial and wholesale business in Mississippi would be broken to the detriment and contant danger of the wholesale grocery business in Mississippi.

The case of *Potter* v. *Springfield Milling Company* opinion, in which we have set out in full, so clearly and completely and finally disposes of the question of the validity of the contracts and the authority of the agent executing the same, when applied to the contracts executed and delivered by J. D. Welsh, State Agent, for the Cape County Milling Company of Jackson, Mississippi, that we deem it unnecessary to cite any other authority

from other states or other courts, for the principle involved in this state are settled by the Potter case.

Appellants lay great stress upon the case of *Becker* v. *Clardy,* 96 Miss. 301. That case however is not in point, was not a case where the travelling representative was given an exclusive territory, and designated the state agent of a foreign corporation he represented, nor, did the foreign corporation, when requested to give quotations or prices to customers of the commodity manufactured and sold, refer such prospective customers to their state agent and representative for such information and prices desired.

In the case of Becker the representative merely solicited orders for the sale of soda water fountains, to be used by the customer in his business, not for resale and not a commodity that varies daily in price, and which is purchased for immediate resale at a profit; in the Becker case it was clearly understood by all parties that the sale and exchange of soda fountains would have to be confirmed and agreed to by the principal, which is a reasonable construction from the evidence in that case, especially in dealing with the commodities and articles there mentioned and which were not for resale. Corporations can only act and speak through their agents, they cannot act or speak themselves. If called upon to do so, the reply comes from an agent, who is sent out to speak and act for the corporation by other or superior agents of the same corporation and the public would never know, and are not expected to know the exact delegated authority to each agent of a corporation, but have a perfect right to believe that an agent placed in a given territory and designated as state agent of Mississippi, as in this case, and so permitted by the corporation to hold himself out and so act in selling flour for resale to wholesale grocers and executing contracts of sale therefor, is acting within the scope of his authority in making sales and executing contracts, as in the instant cases. If his contracts in behalf of his principal can be canceled and held for nought, if the price of the commodity contracted to be sold and delivered advances in price, thereafter by some

other agent or superior agent of the same corporation, then, indeed, business would have to be conducted on very hazardous lines, and in many instances result in chaotic conditions when the wholesale dealer or jobber resells for future delivery, commodities contracted for from the manufacturer, and the manufacturere fails to deliver, for some alleged reasons as in this case after the price has advanced.

We will believe that the law on this point and the evidence in support of the same are so conclusive and so well settled in this state that further argument is unnecessary.

SYKES, J., delivered the opinion of the court.

The appellee grocery company by bill in chancery instituted this suit. The material facts necessary to an understanding of this opinion are as follows:

The Cape County Milling Company, one of the appellants sold some flour to some merchants of Lexington, Miss., and drew a draft for this amount on these merchants. This draft in due course of business reached the hands of the Merchants' and Farmers' Bank of Lexington, Mississippi, for collection, and was by this bank collected. Before the proceeds, however, were remitted to its correspondent bank, the appellee grocery company instituted this suit in chancery to subject this money to the payment of an alleged claim held by it against the appellant Cape County Milling Company for breach of an alleged contract for failure to deliver it flour claimed to have been purchased by the appellee from the appellant milling company. The appellee alleged that it made a contract with the agent of the appellant milling company for the purchase of this flour. The appellant milling company denied that this alleged agent had the authority to make a binding contract for them, but alleged that his only authority was to solicit orders, and that before the contract was binding it had to be ratified or confirmed by them, consequently there was no binding contract.

The only question necessary to be considered by us is whether or not this so-called agent had the real or apparent authority to make a valid and binding contract for the appellant milling company.

The uncontradicted testimony shows that Mr. Welsh, the so-called agent of the milling company, entered the service of this company on August 1, 1916; that on August 2d he called on the appellee grocery company to try to sell or take an order from it for some flour; that he told one of the officers of the appellee grocery company that he could make him a certain price on flour, and showed him a telegram from appellant milling company authorizing him to sell some flour that day at that price; after some discussion the officer of the appellee grocery company informed Mr. Welsh that he could purchase flour at other places for a price of ten cents a barrel less than the price contained in the telegram from the appellant milling company; that Mr. Welsh requested that he be allowed to wire his house to know if he could not meet this lower price, but the appellee grocery company was not willing for him to do so, but told him they would give him an order for flour at this cheaper price; that Mr. Welsh told the appellee that he was the state agent for the appellant milling Company and had the authority to make a valid and binding contract for the sale of the flour and would make it at this lower price. The following paper was then signed by the appellee grocery company and Mr. Welsh:

"August 2, 1916.

"Cape County Milling Company:

"Ship to Gwin Lewis Grocery Company, at Lexington, Miss.: When—At once. How ship—Bank of Lexington. Terms—D. B. L. attached. Salesman—Welsh. Buyer—Gwin.

| 100 bbls. | None Better Wood at | $5.59 |
|---|---|---|
| 50 one-half bbls. | " " " " | 6.09 |
| 35 " " " | " " " " | 5.69 |
| 25 " " " | " " " " | 5.79 |

"Freight to be added.

"Book additional 210 bbls. at same price made Leflore Grocery Company of Greenwood, Miss., to be shipped to above address in sixty days. Price made f. o. b. Jackson, Mississippi, rate figured 61 cents per bbl. to Lexington, Miss., where this 210 bbls. are to be shipped.

"(Signed)  J. D. Welsh, State Agent,
"Jackson, Miss."

It will be noted that Welsh is stated to be the salesman in this order, and that he signed it as "State Agent." It further appear from the record that this order was not mailed until August 3d. Several days afterwards the appellee, assuming that it had purchased this flour from the appellant, wired appellant to ship same, to which telegram the appellant replied that it had no flour booked for appellee.

From the record it appears that Mr. Welsh mailed this written order to the appellant milling company on the 3d of August and accompanied it by a letter in which he asked them please to confirm the sale. The sale was not confirmed, and Mr. Welsh was notified of this fact by the appellant milling company, but Mr. Welsh failed to notify the appellee grocery company of this fact. Consequently the first notice the appellee received was about six days after the order had been taken. In the meantime flour had advanced and continued to advance for some time. On August 28th the appellee grocery company wired the milling company for prices on flour, and the appellant replied by wire to the effect that their Mr. Welsh would see appellee grocery company in the next few days with prices.

This suit is for the difference in price of flour claimed to have been purchased as above stated and the price the appellee grocery company was compelled to pay for this flour in the open market. A decree was rendered in favor of the appellee grocery company.

It is the contention of the appellee grocery company that Mr. Welsh was the general agent of the appellant milling company, or was held out by it to be its general agent, and as such had the real or apparent authority

to make this contract. It is claimed that this is shown by the declarations of Mr. Welsh made to the officer of the appellee grocery company at the time this memorandum was signed, and further by the fact that Welsh signed this agreement or memorandum as "State Agent," and mailed a copy of it to the appellant milling company so signed, and also by the further fact that when on August 28th they wired appellant to quote them prices on flour they were referred to Mr. Welsh.

Counsel for appellee rely upon the case of *Potter* v. *Springfield Milling Co.*, 75 Miss. 532, 23 So. 259. From the opinion in that case, however, it appears that the Springfield Milling Company had given Potts the authority to sell its flour to all persons wishing to purchase it. That is the very question in issue in this case. The authority of an agent to bind his principal rests upon the powers conferred upon him by the principal, and the burden of proof to show that this real or apparent authority is with the complainant in this case, and this burden the complainant has attempted to meet by proving the mere statement of the agent made to the appellee. Agency cannot be proven in this way. *Sumrall* v. *Kitselman Bros.*, 101 Miss. 783, 58 So. 594; *Gulfport & Miss. Coast Traction Co.* v. *Faulk*, 118 Miss. 894, 80 So. 340. The fact that the order was signed "State Agent" falls in the same category, viz. it is an attempt to prove the authority of the agent by the declaration of the agent. This order was not confirmed, but was repudiated, by the appellant milling company. Neither is there any proof of the agency by the mere fact that the appellee was referred to Mr. Welsh to quote them prices on flour. We assume that Mr. Welsh would have been furnished by the milling company with a list of prices by letter or telegram just as he was when he first called upon the appellee grocery company on August 2d.

In this case the testimony for the appellant showed that Mr. Welsh had no authority to make an absolute contract of sale. He was the appellant milling company's traveling salesman or "drummer" only, and, as was held by this

court in the case of *Becker Co.* v. *Clardy,* 96 Miss. 301, 51 So. 211:

"In the absence of express authority, such an agent has authority only to solicit orders and transmit same to his principal for approval."

In this case the order was not approved; consequently there was no binding contract, and the decree below should have been in favor of the defendants.

*Reversed, and bill dismissed.*