KING, C.J.,
Dissenting:
¶ 41. With appropriate respect for the majority, I dissent.
¶ 42. The majority reverses the trial court’s grant of summary judgment in this case. In order to do so, the majority holds that there exists a genuine issue of material fact in dispute as to whether the Touga-loo Economic Development Corporation was the agent of Tougaloo College. Intent of the parties is the controlling factor in determining whether an agency relationship exists. Aladdin Const. Co., v. John Hancock Life Ins. Co., 914 So.2d 169, 176-77 (¶ 14) (Miss.2005). The burden of proving the existence of an agency relationship *955 falls on the party asserting its existence. McFarland v. Entergy Mississippi Inc., 919 So.2d 894, 902 (¶ 25) (Miss.2005) (quoting Highlands Ins. Co. v. McLaughlin, 387 So.2d 118, 120 (Miss.1980)). While this matter is disputed, there is nothing in the record to suggest that this dispute is a genuine dispute. The trial court agreed that this issue was disputed, but noted that there were no actions taken by Tougaloo to induce White Oak LLC to believe that the Tougaloo Economic Development Corporation was authorized to act as the agent of and bind Tougaloo College.
¶ 43. Even when an agency relationship exists, the agent must be authorized to bind the principal to a contract with a third party. Bailey v. Worton, 752 So.2d 470, 475 (¶ 13) (Miss.Ct.App.1999) (citing Gulfport & Mississippi Coast Traction Co. v. Faulk, 118 Miss. 894, 901, 80 So. 340, 341 (1919)). An agent may have actual or apparent authority. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990).
To recover under the theory of apparent authority, a three-prong test must be met. Specifically, recovery requires a sufficient showing of: (1) acts or conduct on the part of the principal indicating the agent’s authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance.
Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1181 (Miss.1990). The trial court noted that any claim by White Oak LLC that it was led to believe that the Tougaloo Economic Development Corporation had spoken for itself and Tougaloo College must be founded on some reasonable basis before Tougaloo College could be held liable for the actions of the Touga-loo Economic Development Corporation. The trial court indicated that there existed no such reasonable basis, and therefore there existed no genuine dispute as to material fact. The trial court essentially found that White Oak failed the first two prongs of the test for apparent authority.
¶ 44. There is no question that White Oak was aware that it was dealing with two separate and distinct entities, the Tou-galoo Economic Development Corporation and Tougaloo College. This fact is shown on the face of the cover sheet for the option, which reads:
OPTION AGREEMENT
BY AND BETWEEN
TOUGALOO ECONOMIC DEVELOPMENT CORPORATION & TOUGALOO COLLEGE
AND
WHITE OAK LLC
¶ 45. The preamble to the Option notes the same three entities as parties, and the Option required a signature on behalf of both the Tougaloo Economic Development Corporation and Tougaloo College.
¶ 46. Section 6 of the Option, which addresses notices to the parties also recognizes and treats the Tougaloo Economic Development Corporation and Tougaloo College as two separate and distinct entities. It mandates that all notices to the Optionor be sent to both Tougaloo Economic Development Corporation and Tou-galoo College. It reads: “Notices required to be given to either party should be given personally or by registered or certified mail, postage prepaid, addressed to the party at its address as stated below, and if given by mail, will be considered delivered as of the date of the postmark. Either party may change the address to which notices are to be sent by giving the other party written notice as provided in this paragraph.”
*956 To Optionor Tougaloo Economic Development Corporation
C/O Robert W. Jones, Chairman
Tougaloo, Mississippi 39174
Tougaloo College
C/O Leroy Walker, Chairman
Tougaloo, Mississippi 39174
¶47. The majority suggests that The Tougaloo Economic Development Corporation and Tougaloo College are in reality one party under the contract. I do not find that to be an appropriate reading of the contract. While the two have similar interests, there is clearly a distinct difference in their respective rights and responsibilities. This reading of the contract is consistent with section 6, which mandated that required notices to the Optioner must be given to both the Tougaloo Economic Development Corporation, and Tougaloo College. A basic principle in agency law is that an agent’s knowledge is generally imputed to its principal. Lane v. Oustalet, 873 So.2d 92, 95 (¶ 15) (Miss.2004) (citing Pittman v. Home Indem. Co., 411 So.2d 87, 89 (Miss.1982)). If the Tougaloo Economic Development Corporation were truly the agent of Tougaloo College, it would be unnecessary for section 6 to require that notice be given to Tougaloo College.
¶ 48. The majority seems to argue that Tougaloo College is chargeable with notice of the actions of the Tougaloo Economic Development Corporation, and had an affirmative obligation to White Oak LLC to disavow any actions taken by the Tougaloo Economic Development Corporation, which exceeded its authority. However, the majority fails to demonstrate the legal foundation for those inferences. A principal may ratify the unauthorized acts of its agent, thereby adopting the acts as his own. Autry v. State, 698 So.2d 84, 87 (¶ 10) (Miss.1997) “Ratification is the affir-mance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.” Id. (quoting Carter v. Hurst, 234 So.2d 616, 620 (Miss.1970)). Even had an agency relationship existed, Tougaloo College clearly did not ratify Tougaloo Economic Development Corporation’s actions, as evidence by the letter Tougaloo College’s attorney sent White Oak on November 29, 2001, notifying White Oak that it had breached the contract by failing to make the $50,000 payment.
¶ 49. The majority does state that the Tougaloo Economic Development Corporation and Tougaloo College have a number of overlapping board members. One presumes that the unspoken inference is that this overlap creates a single identity. Without more, that is not the law. “Basic law of corporations holds that the distinct corporate identity will be maintained unless to do so would subvert the ends of justice” Castillo v. M.E.K Const., Inc., 741 So.2d 332, 340 (¶22) (Miss.Ct.App.1999) (quoting Johnson and Higgins of Mississippi, Inc. v. Commissioner of Ins. of Miss., 321 So.2d 281, 284 (Miss.1975)). Corporations maintain their separate and distinct identities even when two corporations share the same officers. Id.
¶ 50. The record before this Court lacks any evidence of intent to establish a unity of identity between the Tougaloo Economic Development Corporation and Tougaloo College, nor does it contain any evidence to suggest that White Oak was entitled to reasonably rely upon the actions of the Tougaloo Economic Development Corporation to bind Tougaloo College.
¶ 51. In its quest to find a genuine material dispute of fact, the majority places great weight on the failure of the written documents to use the plural terms optioners or landlords. In doing so, it conveniently forgets the notice provision of *957 the lease does not provide that notice to the Optioner may be given to either Tou-galoo College or the Tougaloo Economic Development Corporation. Instead, it provides for notice to the Optioner as follows:
Tougaloo Economic Development Corporation
C/O Robert W. Jones, Chairman
Tougaloo, Mississippi 39174
Tougaloo College
C/O Leroy Walker, Chairman
Tougaloo, Mississippi 39174
¶ 52. No reasonable reading of this language indicate anything other than that notice to the Optioner must be sent to both Tougaloo Economic Development Corporation and Tougaloo College.
¶ 53. No matter how the majority seeks to ignore the fact, the Tougaloo Economic Development Corporation is a separate and distinct legal entity from Tougaloo College. That fact is not changed by the majority’s attempted sleight of hand with language.
¶ 54. In nothing contained in the record is it stated, inferred or suggested that the Tougaloo Economic Development Corporation had any ownership of the real property which is the subject of this action. If there is no actual ownership of the subject real property by the Tougaloo Economic Development Corporation, it would have to find authority from some other source to extend the option. The majority conveniently fails to identify any source of authority which would allow this separate and distinct legal entity to affect property owned by yet another separate and distinct legal entity. Instead, the majority simply says that the two separate and distinct entities had some shared members. Perhaps that failure is because to do so, the majority would have to deal with the reasonableness of White Oak’s claim in something more than a peripheral manner.
¶ 55. In the absence of an ownership interest or some other right or authority, the Tougaloo Economic Development Corporation could not, acting by itself, extend the option. There is no suggestion of any ownership interest in the real property by the Tougaloo Economic Development Corporation. Nor does the record contain any specific identification of any right or authority of the Tougaloo Economic Development Corporation to singularly authorize an option extension.
¶ 56. Because of this, I would affirm the grant of summary judgment.
LEE, P.J. AND IRVING, J., JOIN THIS OPINION.