GENERAL CONTRACT CORP. *v.* LEGGETT.

No. 39554          May 9, 1955          79 So. 2d 843

June 13, 1955                    80 So. 2d 762

*Wm. Harold Cox,* Jackson, for appellant.

264

*Norman B. Gillis, Jr.,* McComb, for appellee.

266

APPELLANT IN REPLY.

LEE, J.

On September 17, 1953, Jesse C. Leggett traded his 1951 Chevrolet car to C. W. Johnston, doing business as Motor Corral at McComb, Mississippi for a 1953 Plymouth car. While Leggett was inclined to pay the difference of $900 in cash, Johnston encouraged him to fi-

nance it. This he did with the assurance that he could still pay the same in cash at any time within thirty days. So the conditional sales contract was executed by the parties, and Leggett signed the accompanying note. The papers were endorsed by Johnston, without recourse, assigned to General Contract Corporation, and were promptly forwarded to the Corporation. A few days later, the Corporation, in writing, advised Leggett that it held the paper, evidencing twenty-four payments of $51.33 each, and that the first installment would be due and payable on November 3, 1953. A coupon book was enclosed for utilization in remitting by mail. Upon a consideration of the amount of the finance charges, Leggett, on September 28 went to the Motor Corral to pay off the indebtedness.

For the purpose of complying with this request Johnston telephoned the Jackson office of the Corporation and ascertained that the necessary amount would be $915. Leggett drew a check on his bank in that sum and handed it to Johnston, who dated it and wrote in the Motor Corral, as the payee. He then gave Leggett the car invoice with the notation "Paid in full. Sept. 28, 1953. By C. W. Johnston" written thereon.

Leggett did not reply to the communication which he had received from the Corporation. About November 10, 1953, he received a letter from the Corporation, advising that his first payment was past due. Immediate payment was demanded. He thereupon went promptly to the Jackson office with the paid invoice and his cancelled check. While there, the automobile was seized under a writ of replevin. Leggett later tendered a proper bond, and the automobile was restored to him. Needless to say, Johnston did not remit the money which he collected from Leggett, and sometime later his business failed.

Thus Leggett paid out his money, but the Corporation, to which it should have been paid, did not receive it.

In the county court, in the replevin action brought by the Corporation, the defendant offered evidence to show that the Motor Corral had financed all of its paper through the Corporation; that a sign of the Corporation, advertising its business, was displayed in the office of the Motor Corral; that from March 5 to November 4, 1953, Johnston collected payments from his customers and remitted to the Corporation $13,601.21; and that at one time, the Corporation wrote him a letter, expressing its appreciation for the collection service which he had given on certain accounts. But it also appeared that Johnston, following the payment to him by a customer, would remit his or a cashier's check along with a form, on which he asked that the customer should be credited accordingly. The form contained this express provision: "We have acted as the customer's agent in the acceptance of these payments." Some of this paper was endorsed with recourse. In that case, Johnston had a potential liability, and of course was concerned that such debtors should pay up. The Corporation had never authorized him to collect for it as its agent, and had never paid him anything for such service. When a customer desired to pay off his note, Johnston would ascertain the amount, send it to the Corporation, and the Corporation would then send to him the papers, marked paid.

Where the relationship of principal and agent exists, if the principal places his agent in a position where he appears, with reasonable certainty, to be acting for the principal, and his acts are within the apparent scope of his authority, obviously such acts bind the principal. Allen v. Moss Tie Co., 157 Miss. 392, 128 So. 351, and authorities too numerous to mention.

But the trouble here is that there was not a scintilla of evidence that Johnston was an agent of the Corporation at the time when he received the check from Leggett. Always theretofore, when he received money from customers to be applied on their notes, he remitted under

the distinct understanding that he was doing so as the agent of his customers. He admitted that until this controversy arose, he had never considered himself an agent of the Corporation.

As was said by this Court in Union Station Trust Co. v. Bostick, 133 Miss. 627, 98 So. 105, "It is the duty of the maker of a note to require its production **before making payments** thereon, and if he fails to do so he pays at his risk. The note itself is the only evidence the maker has the right to rely upon. He has the right to refuse payment until actual presentation." See also Virginia-Carolina Chemical Co. v. Steen, 99 Miss. 504, 55 So. 47; Sivley v. Williamson, 112 Miss. 276, 72 So. 1008; J. B. Colt Co. v. Black, 144 Miss. 515, 110 So. 442; Anderson v. Moore Dry Goods Co., 152 Miss. 312, 119 So. 914; Adler v. Interstate Trust & Banking Co., 166 Miss. 215, 146 So. 107; New Home Sewing Machine Co. v. Moody, 189 Miss. 628, 198 So. 550.

In Ubaldini v. C. I. T. Corp., 186 Atl. 198, a Pennsylvania case, and Andrew v. Kolsrud, 253 N. W. 913, an Iowa case, largely relied upon by the appellee, the proof of agency was altogether different. In the former, the finance company knew that the motor company kept receipt books. Copies of all receipts were forwarded to the finance company. Its collectors regularly called on the motor company for the purpose of receiving and checking up such payments by examination of the receipt books and would initial the triplicate copies in those books to show that the money was received by the finance company. In other words, the evidence was ample to sustain a finding that the motor company was an implied agent to receive payment of the finance company's notes. In the latter case, the proof showed that the bank knew that Reed & Lennon were making collections on the notes and turning the proceeds thus collected over to it. One of the officers of the bank testified that, "We allowed Reed & Lennon to go ahead and make

collections on the notes sold to the bank." Thus the implied agency was clearly established.

■ ■ The judge of the county court, who tried this cause without a jury, found for the defendant, and the circuit court, on appeal, affirmed that judgment. But since the evidence wholly failed to show that Johnston, when he received the money from Leggett, was acting either expressly or impliedly as an agent for the Corporation, it follows that the judgment of the lower court must be reversed and a judgment must be entered here in favor of the appellant.

Reversed and judgment here for the appellant.

*McGehee, C. J.*, and *Arrington, Ethridge* and *Gillespie, JJ.*, concur.

### ON MOTION TO CORRECT JUDGMENT

Lee, J.

When the initiatory writ of replevin was served on Leggett, he made bond in the sum of $2,500, with American Bonding Company as surety, conditioned to have the automobile in question before the court on the Second Monday of January 1954 to satisfy the judgment of the court. The county judge, sitting as both judge and jury, fixed the value of the automobile at $1,250, but found for Leggett and ordered that he retain the automobile. If the court had found for General Contract Corporation, it of course would have ordered Leggett to deliver the automobile (describing it) up to the Corporation, or pay the sum of $1,250, the value thereof. Section 2849, Code of 1942.

The cause was reversed by this Court on appeal, and judgment was entered for the appellant here. Now the judgment as entered, ordered that "the appellee, Jesse C. Leggett and American Bonding Company, surety on the appellee, J. C. Leggett's, replevin bond, do immediately restore to General Contract Corporation One (1) 1953 Model Plymouth Automobile, Motor Number P24-

416573, if to be had, or its value, to-wit: the sum of $1,250.00," together with costs.

■■ Under that judgment, the restoration of the automobile and the payment of costs would effect satisfaction. But obviously if the automobile was worth $1,250 in January 1954, it is not worth that much now. Its value has been depreciated from age, and it may have also been damaged. Responsibility of the surety for such elements are, by statute, written into the replevin bond. Section 2849, supra. See also Martin v. Coker, 204 Miss. 576, 37 So. 2d 772.

■■ The judgment should therefore be corrected so as to provide that Jesse J. Leggett and American Bonding Company, his surety, immediately restore to General Contract Corporation the automobile, as above described, and pay the difference between its present value and $1,250, or pay to General Contract Corporation the sum of $1,250, and all costs.

If the appellee and his surety elect, within fifteen days, to restore the automobile instead of paying its originally adjudicated value, then the cause will be remanded to the County Court of the First Judicial District of Hinds County for the sole purpose of determining, on a writ of inquiry, the present reasonable value of the automobile; and after such determination, the automobile shall be delivered up to General Contract Corporation, and the Corporation shall recover of and from Jesse C. Leggett and American Bonding Company, his surety, the difference between the present reasonable value of the automobile and the sum of $1,250.

Motion to correct judgment sustained.

All justices concur.