645 So.2d 1323 (1994)
John W. EATON, Jr., d/b/a Eaton Motors
v.
Herbert W. PORTER and Marilyn Porter.
No. 92-CA-00528.
Supreme Court of Mississippi.
December 1, 1994.
Jess H. Dickinson, Dickinson & Associates, Gulfport, for appellant.
Robert C. Galloway, Galloway & Galloway, Gulfport, for appellees.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
This appeal arises from an order of the Harrison County Circuit Court affirming an April 30, 1991 judgment of the County Court, First Judicial District of Harrison County, in a breach of contract and negligence action. *1324 John W. Eaton, Jr. d/b/a Eaton Motors, was found liable for damages sustained by Herbert and Marilyn Porter as a result of the actions of his agent, J.W. Eaton, Sr. (Eaton, Sr.). Finding that Eaton, Sr.'s actions were such as to lead the Porters to reasonably believe that the agent had the apparent authority to accept their vehicle for repairs, we affirm the judgment against Eaton Motors.

I.
Herbert and Marilyn Porter, residents of Memphis, Tennessee, were involved in a head-on collision while visiting relatives on the Mississippi Gulf Coast in August, 1989. On the recommendation of Mrs. Porter's aunt, the Porters went to see Eaton, Sr. at Eaton Motors about having the car repaired. Sitting at Eaton, Sr.'s desk, they discussed the repairs and Eaton, Sr. made arrangements for the car to be moved to Eaton Motors from National Muffler Shop where it had been towed after the accident. Eaton, Sr. agreed to have the car fixed for them. Before the Porters left, he gave them a copy of his business card, reproduced below.

Based on Eaton, Sr.'s representation that all of the work could be done in his shop, Porter testified that they had been under the impression that the car would be repaired at Eaton Motors. Eaton, Sr., however, bought parts for the car from Haley's Auto Parts and Bubba Oustalet Lincoln Mercury and had the repair work done at Bailey's Auto Body where, he contends, he told Porter the work would be done.
On August 15, approximately ten days after the accident, George A. Tootle, Jr., an appraiser for Coastal Appraisal Services was contacted by the Porter's insurer, Amerisure Insurance Company. Tootle went to see the car at Eaton Motors. After completing his estimate, he asked an employee, whom he presumed to be the manager, to check it over but was directed to Eaton, Sr. After he and Eaton, Sr. reviewed the estimate, Eaton, Sr. signed the estimate, "Eaton Motors," and under that, "J.W. Eaton."
Upon receiving Tootle's estimate, Amerisure sent Mrs. Porter a check for $4,548.51 dated August 17, 1989. Since the check was made payable to Mrs. Porter and the Memphis Area Teachers Credit Union, Mrs. Porter endorsed it, "Pay to the order of Eaton Motors." Porter sent the check to Eaton, Sr. at Eaton Motors, who, in turn, endorsed the check "Eaton Motors" and signed his name.
Porter talked to Eaton, Sr. on the telephone several times while the car was being repaired. When it was ready, he flew to Gulfport to pick it up. Although Eaton, Sr. and an Eaton Motors employee, Don Smith, testified that Porter drove the car around the block, Porter stated that he did not test drive it before departing for Memphis. On the way home, Porter noticed that "the car was trying to dart from side to side and it was vibrating." The next morning, he took the car to Scott Alignment Company in Memphis, where the first of myriad problems with the car were revealed.[1] He telephoned Eaton, Sr. to express his displeasure. Porter testified that Eaton, Sr. told him to get some estimates for repairing the defects, but it is *1325 disputed whether he offered to have the problems fixed. It was estimated that correcting the defective repair work would cost approximately $4,000.00.
The Porters then filed a complaint to recover damages against Eaton, Jr. d/b/a Eaton Motors and Eaton, Sr. in the County Court of Harrison County on November 8, 1989. They raised allegations of breach of contract, negligent repairs and breach of implied warranty to repair a vehicle in a workmanlike manner. A bench trial was held in County Court on April 10, 1991. In a letter opinion dated April 24, 1991, County Court Judge Gaston H. Hewes, Jr. found that the Porters had shown by the preponderance of the evidence that Eaton, Sr. had acted with apparent authority, thus binding Eaton, Jr. d/b/a Eaton Motors for purposes of imposing liability. Eaton, Jr. d/b/a Eaton Motors was ordered to pay damages of $3,465.10 plus interest and costs.
Eaton appealed the decision to the Harrison County Circuit Court, which affirmed the judgment in favor of the Porters.

II.
John W. Eaton, Jr. d/b/a Eaton Motors concedes that J.W. Eaton, Sr. was his agent. Thus, the crux of Eaton's appeal is whether the evidence supports the findings of the circuit and county courts that J.W. Eaton, Sr. had the apparent authority to bind the principal, John W. Eaton, Jr. d/b/a Eaton Motors, to an agreement to repair Herbert and Marilyn Porter's automobile. Eaton contends that extent of Eaton, Sr.'s authority is determined solely by the actions of the principal, Eaton, Jr. d/b/a Eaton Motors. We disagree.
This Court has defined apparent authority and found that the extent to which it binds the principal is predicated upon the perceptions of the third party in his dealings with the agent:
Apparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have.
Ford v. Lamar Life Insurance Co., 513 So.2d 880, 888 (Miss. 1987). We further have stated that:
[T]he principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be so far as third persons are concerned, the apparent powers of an agent are his real powers.
Steen v. Andrews, 223 Miss. 694, 697-698, 78 So.2d 881, 883 (1955) quoted in Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1180-1181 (Miss. 1990).
Whether an agent has the apparent authority to bind the principal is a question of fact to be determined by the chancellor, or if in circuit court, by the jury.[2]Alexander v. Tri-County Cooperative (AAL), 609 So.2d 401, 403 (Miss. 1992); Clow Corp. v. J.D. Mullican, Inc., 356 So.2d 579, 583 (Miss. 1978). The finder of fact must determine whether there is sufficient evidence to meet the three-pronged test for recovery under the theory of apparent authority, which requires a showing of (1) acts or conduct of the principal indicating the agent's authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance. Christian Methodist Episcopal Church v. S & S Construction Co., Inc., 615 So.2d 568, 573 (Miss. 1993); Alexander, 609 So.2d at 403; Andrew Jackson, 566 So.2d at 1181; Clow, 356 So.2d at 582. Once made, "[t]his finding will not be disturbed unless clearly contrary to the overwhelming weight of credible evidence when viewed in the light *1326 most favorable to the verdict." CME Church, 615 So.2d at 573, 574; Andrew Jackson, 566 So.2d at 1181.
Looking, as we must, at the evidence in a light most favorable to the trial court's affirmation of the county court's decision in favor of the Porters, there is considerable evidence to support the finding that J.W. Eaton, Sr. was clothed with the apparent authority to bind Eaton Motors. Considering the first prong of the test, we look at the acts or conduct of the principal which indicate the agent's authority. Eaton Motors provided Eaton, Sr. with a desk on its premises; its business cards named both Eaton, Jr. and Eaton, Sr. Further, Eaton, Sr. endorsed checks on behalf of Eaton Motors, to which he had directed the Porters to endorse the check received from their insurer. After making his estimate of the repairs needed on the Porter's automobile, George Tootle, the appraiser, was directed by another employee to Eaton, Sr., who signed the estimate, "Eaton Motors" and "J.W. Eaton."
Eaton, Jr., on the other hand, first argues that there was no evidence presented that Eaton Motors held itself out to the public as a repair business, to wit: its business cards make no reference to auto repairs; it did not advertise as a repair shop; an employee testified that no repairs had been made on the premises for five years prior to the incident complained of. He further contends that "[i]t is necessary then to look at the acts and conduct of John W. Eaton, Jr. in determining whether J.W. Eaton, Sr. was cloaked with apparent authority to bind Eaton Motors to a contract for the repair of an automobile." He emphasizes that he never met the Porters and did not become involved in the transaction or make any representations directly to them. Eaton misses the point and misconstrues our case law. In CME Church, where the Church was found to be bound by its agent's representation to a contractor that it had sufficient funds to complete a construction project, we stated that:
The conduct of CME indicating Peeples' authority was: naming him Secretary of the Department of Finance, charging him with the duty to write checks for the church, and providing him with CME Department of Finance letterhead. In other words, as stated by the chancellor, CME "clothe[d] him with the indicia of being a person who knows and may make statements on such matters."
CME Church, 615 So.2d at 573. Contrary to Eaton's argument, the Court in CME Church made no inquiry into how the church had held itself out to the general public and cared not whether anyone from the church but its agent, Peeples, had made any representations to the contractor. The first prong of the test was fulfilled merely by acts of the principal which clothed the agent with indicia of authority. Similarly, in Andrew Jackson, upon which Eaton relies, where an insurer was found liable for the misrepresentations of its agents to a member of a group of insureds, the agents' representations to the third parties coupled with "the blatant failure by the insurer to provide `notice of restrictions upon [the agents'] authority' to avert misleading or fraudulent representations" was sufficient to satisfy the first prong of the test. Id. at 1181. Again, the Court did not focus on whether the insurer held itself out to the general public as offering instantly effective coverage, but on the authority it appeared to have vested in its agent to make such representations to a particular group of insureds and how those third parties perceived that authority. In the case sub judice, there likewise is sufficient evidence to show that Eaton, Jr. d/b/a as Eaton Motors, had clothed Eaton, Sr. with the necessary indicia of authority. As our previous decisions have indicated, the facts that Eaton, Jr., himself, made no representations to the Porters and advertised his business in a particular manner to the general public are of little consequence. "In Mississippi, agency and the scope thereof may be proved through the testimony of the agent alone." Hamilton v. Bradford, 502 F. Supp. 822, 830 (S.D.Miss. 1980). The key is how these particular third parties, the Porters, perceived the actions of the agent, Eaton, Sr.
Considering the second prong of the test, we must determine the reasonableness of the Porter's reliance on Eaton Sr.'s actions. Looking at the evidence in a light most favorable to the verdict, Porter denied that Eaton, *1327 Sr. told him that the car would be taken elsewhere for repairs. The record indicates that Eaton, Sr. made arrangements for the car to be moved from National Muffler Shop to Eaton Motors while the Porters sat at his desk. Eaton, Sr. signed the repair estimate as well as the insurance check which was endorsed to Eaton Motors. Although Don Smith, a former Eaton Motors employee, testified that the only repairs or body work done on the premises was to vehicles which were to be sold on the lot, Porter testified that he saw a repair bay, a cutting torch, a paint sprayer and a vehicle masked for painting. Moreover, the Porters were not residents of the area and could not be expected to be familiar with Eaton Motors' advertising, reputation or business operations. They went home to Memphis after the accident, only to return when the car was ready. Especially considering the circumstances, it cannot be said that the Porter's reliance on Eaton, Sr.'s actions or representations was unreasonable.
Finally, in determining whether the third prong was satisfied, we consider whether the injured third party changed his position in reliance on the agent's actions. Porter admitted that he went to see Eaton, Sr. because Mrs. Porter's aunt, a resident of the community, had told him "that he did good work and he had repaired cars for them before." However, he testified that had Eaton told him that the car would be taken somewhere else for repairs, he would have specified a Lincoln-Mercury dealership. Thus, looking at the facts in a light most favorable to the decision of the court below, the Porters, to their detriment, refrained from seeking other repair options.

II.
A determination of apparent authority is reversible only when it is "clearly contrary to the overwhelming weight of credible evidence when viewed in the light most favorable to the verdict." CME Church, 615 So.2d at 573, 574; Andrew Jackson, 566 So.2d at 1181. Especially when viewing the record in a light favorable to the circuit court's ruling, the evidence supports a finding that the actions of Eaton, Jr. sufficiently clothed Eaton, Sr. with the apparent authority to accept the Porter's car for repairs; that the Porter's reliance on Eaton's position was neither imprudent nor unreasonable; and finally, that the Porters relied on Eaton to their detriment. We cannot emphasize too strongly that the extent of an agent's apparent authority is not predicated solely upon the principal's actions, but upon how a third party reasonably receives the actions of the agent. Accordingly, we affirm the decisions of the county and circuit courts.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] Thirty-one defects in the repair job were alleged, ranging from the use of used parts instead of new ones to the failure to repair the vehicle's bent frame. The nature and extent of those defects, however, is not at issue in this appeal.
[2] Eaton, Sr. testified that his son had not authorized him to enter into contracts on behalf of Eaton Motors for body work or repair work, but that he agreed to help the Porters because they were related to friends. However, upon a finding that an agent had apparent authority to bind the principal, the issue of actual authority need not be reached. Andrew Jackson, 566 So.2d at 1180.