752 So.2d 470 (1999)
Robert M. BAILEY, Appellant,
v.
Richard WORTON d/b/a Worton Asphalt & Paving, Appellee.
No. 1998-CA-01575-COA.
Court of Appeals of Mississippi.
December 7, 1999.
Rehearing Denied February 8, 2000.
*472 James E. Woods, Attorney for Appellant.
Christian T. Goeldner, Southaven, Gregory C. Morton, Olive Branch, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
LEE, J., for the Court:
¶ 1. The Chancery Court of DeSoto County found that a construction lien filed pursuant to Miss.Code Ann. § 85-7-131 by Richard Worton d/b/a/ Worton Asphalt & Paving, the appellee, was enforceable against Robert M. Bailey, the appellant and true owner of the subject property, having determined that there was sufficient evidence to establish that the general contractor, Ray and Associates, was an implied agent acting within the "apparent authority" granted by Bailey, in contracting with Worton. Having found no error, we affirm the judgment of the lower court.

FACTS
¶ 2. Robert M. Bailey, the appellant, and his partner were the developers of the College Hills Subdivision in Olive Branch where Worton Asphalt & Paving had installed a driveway on a lot the title of which is in the name of the appellant, Bailey. Bailey, in his effort to develop the area in the back portion of the subdivision where the subject lot is located, made an agreement with Billy and Sandra Ray d/b/a Ray & Associates, as builders and *473 realtors, granting permission to them to build a house on the lot. The Rays were free to build the house as they wished, subject to the architectural approval consistent with the covenants of the subdivision. Ray was to secure a purchaser for the house and would pay Bailey for the lot when the house sold.
¶ 3. Bailey testified that he signed a note from the Bank of Tunica and loaned Ray the money on the lot for the house. Ray began construction and advertised the house for sale. The ad represented Ray & Associates as the sellers and real estate agents. The Rays later entered into a contract for the construction and sale of the house with Joe and Wendy Hill. Ms. Hill testified that she did not know at that time that Bailey was the owner of the lot. The contract with the Hills provided that the Hills would provide the labor for a portion of the construction of the house. Construction proceeded; however, the Rays developed financial problems and did not pay Worton Asphalt & Paving for the paving of the driveway of the house.
¶ 4. Ms. Hill testified that the asphalt work for the driveway was ordered by the Rays. Hill stated that she was present when Worton Asphalt arrived at the lot to pave the driveway. However, Worton Asphalt was prepared to leave the construction site without performing the work since neither of the Rays was present to sign the contract for $2,900. Hill managed to contact Sandra Ray by phone while Worton Asphalt was still at the site, and Ray authorized Worton to do the work. Billy Ray arrived at the site of the construction shortly thereafter, and the driveway was then paved. Bailey was not aware that the drive had been paved until several days later when he was driving through the subdivision. He stated that he was no more involved in the construction or progress of this house than he was with any other house in the subdivision, and his involvement was limited to getting paid for the lot when the house was sold.
¶ 5. Worton himself did not testify but his foreman, Mr. Collins, did. No testimony was offered regarding Bailey, and there was nothing to indicate that Worton relied on the Rays as agents of Bailey or had any knowledge that they were agents of Bailey. Hill was unequivocal in her testimony that Bailey was not involved with the negotiation and execution of the Hill contract with the Rays for the purchase of the house and that she did not even know of Bailey at the time that the contract for the house was signed. Bailey stated in his testimony that he met Ms. Hill for the first time when she stopped him in the road one day as he was driving through the subdivision. Hill knew who Bailey was because Sandra Ray made frequent references to him and had spoken with him on her speaker phone from her office in Hill's presence. Hill also testified that Ray periodically notified Bailey of the progress of the construction of the house. At the time that Hill stopped Bailey as he was driving, she expressed her problems to him regarding the Rays and told Bailey that she was prepared to hire an attorney. As a result of this conversation, Bailey said that he called Sandra Ray and asked her to get in touch with the Hills to work out their problem. Bailey also testified that he did not tell Hill that he was the actual owner of the lot at that time because he did not realize that he was. He indicated that in the past such agreements for construction had been prompted by a conveyance of the lot through a second mortgage. He testified that the house was Sandra's and that he "had even forgotten about the title being in my name until they brought it up."
¶ 6. Worton Asphalt & Paving filed a construction lien pursuant to Miss.Code Ann. § 85-7-131 (1972) for $2,900 for the driveway and sought enforcement against Bailey. As to the claim of lien, Miss.Code Ann. § 85-7-135 (1972) reads as follows: "The lien declared in Section 85-7-131 shall exist only in favor of the person employed, or with whom the contract is made to perform such labor or furnish *474 such materials or render such architectural service, and his assigns, and when the contract or employment is made by the owner, or by his agent, representative, guardian or tenant authorized, either expressly or impliedly, by the owner."
¶ 7. The Chancery Court of DeSoto County, having determined that there was sufficient evidence to establish an implied agency relationship between the general contractor with whom the appellee contracted and Bailey, found the lien to be enforceable against Bailey. Bailey appeals, claiming that the Rays' agreement with Worton does not bind him.

ISSUES

I. IS RAY AN IMPLIED AGENT OF BAILEY?
¶ 8. An agent is one who stands in the shoes of his principal; he is his principal's alter ego. An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by his authority. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do. 2 C.J.S. Agency § 1 c (1936). The most characteristic feature of an agent's employment is that he is employed primarily to bring about business relations between his principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities. First Jackson Securities Corp. v. B.F. Goodrich Company, 253 Miss. 519, 532-33, 176 So.2d 272, 278 (1965).
¶ 9. The applicable standard of review will not permit that the finding of the trier of fact be disturbed on appeal if there is substantial supporting evidence even if under the same proof we might have found otherwise. The finding of fact may not be set aside unless manifestly wrong. Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss.1985); Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983). "Findings of fact made by a chancellor which are supported by credible evidence, may not be set aside on appeal." Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985).
¶ 10. In applying this definition of an agent to the facts as presented by Bailey himself describing the relationship established between him and the Rays, it is beyond dispute that the finding of the lower court that the Rays were implied agents of Bailey is supported by the credible evidence. Bailey's testimony in essence was that he gave Sandra Ray unconditional authority to build the house on the lot. He stated, "Really, I had no involvement at all. This was Sandra's house. I had even forgotten about the title being in my name until they brought it up. It was her house to sell. If she made money on it, that's fine. All I was doing was selling the lot." Bailey's objective was to sell the lot, and he had apparently arrived at the conclusion that the lot was more likely to sell with a house built on it than simply standing on its own. He therefore gave Ray the authority to build a house on his lot, which only he, as record title holder, had the authority to do. The fact that he had forgotten that the title to the lot was in his name could be construed as evidence pointing to the degree of authority with which he had endowed Sandra Ray; that is, he had delegated ultimate authority, either intentionally or through his own negligence, to her for the construction of the house, subject to the covenants and restrictions of the College Hills Subdivision. There is no question that the evidence was substantial and credible to support a finding that Ray became Bailey's agent, in accordance with the definition enunciated above.

II. DID THE RAYS HAVE THE APPARENT AUTHORITY TO BIND BAILEY ON THEIR CONTRACT WITH WORTON?
¶ 11. The chancellor, in his opinion, found that the Rays had the apparent authority from Bailey, in their dealing with *475 Worton, to bind Bailey. As his authority the chancellor cited Eaton v. Porter, 645 So.2d 1323, 1325 (Miss.1994): "This Court has defined apparent authority and found that the extent to which it binds the principal is predicated upon the perceptions of the third party in his dealings with the agent: Apparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have."
¶ 12. Whether an agent has the apparent authority to bind the principal is a question of fact to be determined by the chancellor, or if in circuit court, by the jury. Alexander v. Tri-County Cooperative (AAL), 609 So.2d 401, 403 (Miss.1992). The fact finder must determine whether there is sufficient evidence to meet the three-pronged test for recovery under the theory of apparent authority. Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1181 (Miss.1990). There are three essential elements to apparent authority: (1) acts or conduct of the principal indicating the agent's authority; (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. Id.; Gulf Guaranty Life v. Middleton, 361 So.2d 1377, 1383 (Miss. 1978); Steen v. Andrews, 223 Miss. 694, 697-98, 78 So.2d 881, 883 (1955); Eaton, 645 So.2d at 1325. Once made, "[t]his finding will not be disturbed unless clearly contrary to the overwhelming weight of the credible evidence when viewed in the light most favorable to the verdict." Eaton at 1325-26 (quoting Christian Methodist Episcopal Church v. S & S Construction Co., Inc., 615 So.2d 568, 573-74 (Miss. 1993); Andrew Jackson, 566 So.2d at 1181.)
¶ 13. Looking, as we are required, at the evidence in a light most favorable to the chancery court's findings in favor of Worton, there is ample evidence to support its conclusion that Sandra Ray was clothed with the apparent authority to bind Bailey. Considering the first prong of the test, we look at the acts or conduct of Bailey, the principal, which indicate the agent's authority. The authority of an agent to bind his principal rests upon the powers conferred upon him by the principal. Gulfport & Mississippi Coast Traction Co. v. Faulk, 118 Miss. 894, 901, 80 So. 340, 341 (1919). Bailey's testimony itself, standing on its own, indicates the infinite authority he bestowed upon Sandra Ray. In an apparent effort to detach himself from Ray, he stated that he had no involvement in the house, that it was "Sandra's house." This was corroborated to a substantial degree by Wendy Hill's testimony that Bailey told her that the Rays were responsible for ordering all of the materials for the house as well as the testimony revealing that Bailey was not involved in any way with the Rays contract with the Hills to purchase the house. Bailey was also not involved in the contract with Worton Paving for the driveway. As stated in the discussion of the first issue, Bailey had delegated ultimate authority to Sandra Ray for the construction of the house and his lack of involvement is conduct demonstrating this.
¶ 14. The second prong of the test requires reasonable reliance upon the acts and conduct of the principal by a third person as an essential element of apparent authority. Eaton, 645 So.2d at 1325. This application to the instant case would necessitate a showing that Worton reasonably relied upon the acts or conduct of Bailey indicating to Worton that Ray had the apparent authority to act for Bailey as the owner of the property. Bailey argues that since Worton was unaware of Bailey's existence that he could not have relied on him. We disagree. Bailey's lack of presence does not absolve him of accountability but rather is indicative of his status as an undisclosed principal. Though an agent is personally answerable if at the time of *476 making the contract in his principal's behalf he failed to disclose the fact of his agency, the other party to the contract may proceed against the agent or against the principal. Estes v. Jones, 119 Miss. 142, 146-47, 80 So. 526, 528 (1919); Kelly v. Guess, 157 Miss. 157, 161-62, 127 So. 274, 276 (1929). Bailey's disappearing act is the explanation for Worton's reliance on Ray's apparent authority as the owner of the lot.
¶ 15. The test finally requires that a third person change his position to his detriment in reliance on the apparent authority of the agent. The facts indicate that Worton was prudent in his business practices. The testimony of Wendy Hill disclosed that when Worton Paving came to install the driveway that it would not proceed with its work unless authority was given by the Rays, indicating that Worton sought the party with apparent authority to bind on his contract for the driveway. Had Bailey manifested himself as the true property owner, Worton would have known that Ray was not the true owner of the lot. It is not unreasonable to conclude that Worton would have thus sought to bind Bailey as the true owner of the lot. Not being aware of this, Worton relied on Ray to his detriment.
¶ 16. Looking at the facts in a light most favorable to the decision of the court below, it is not unreasonable to conclude that Worton relied on Ray and no one else because of her apparent authority. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S. Agency §§ 95, 96. The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be. McPherson v. McLendon, 221 So.2d 75, 78 (Miss.1969); Steen v. Andrews, 223 Miss. 694, 697, 78 So.2d 881, 883 (1955). Where the relationship of principal and agent exists, if the principal places his agent in a position where he appears, with reasonable certainty, to be acting for the principal, and his acts are within the apparent scope of his authority, such acts bind the principal. On principles of estoppel, a principal, having clothed an agent with semblance of authority, will not be permitted, after others have been led to act in reliance on appearances thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent's powers. General Contract Corp. v. Leggett, 224 Miss. 262, 269, 79 So.2d 843, 844 (1955). Where an agent, with the knowledge and consent of his principal, holds himself out as having certain powers and transacts business with a third person, the principal is estopped from denying the authority of the agent. Germania Life Ins. Co. v. Bouldin, 100 Miss. 660, 678, 56 So. 609, 613 (1911).

CONCLUSION
¶ 17. It is our opinion that the evidence was sufficient to show that the Rays were implied agents of Bailey vested with the apparent authority to bind Bailey on the construction lien filed by Worton Asphalt & Paving pursuant to Miss.Code Ann. § 85-7-131 (1972). Under Mississippi agency law, a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990); Ford v. Lamar Life Ins. Co., 513 So.2d 880, 888 (Miss.1987). "If an agent acted within his apparent authority, the issue of actual authority need not be reached." Andrew Jackson, 566 So.2d at 1180. Finding no error, we affirm the judgment of the chancellor.
¶ 18. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED *477 TO THE APPELLEE. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. MOORE, J., NOT PARTICIPATING.