# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00640-COA

THOMPSON TREE AND SPRAYING SERVICE,            APPELLANT
INC. D/B/A LIVE OAK CONSTRUCTION

v.

CITY OF MCCOMB, MISSISSIPPI                   APPELLEE

DATE OF JUDGMENT:           04/13/2017
TRIAL JUDGE:                HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:  PIKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      CLYDE X. COPELAND
                                   MATTHEW WILLIAM VANDERLOO
                                   CORY TODD WILSON
ATTORNEY FOR APPELLEE:        WAYNE DOWDY
NATURE OF THE CASE:           CIVIL - CONTRACT
DISPOSITION:                AFFIRMED: 11/20/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT**:

¶1. In this contract case, Thompson Tree and Spraying Service Inc., doing business as

Live Oak Construction ("Live Oak"), appeals a judgment rendered by the Pike County

Circuit Court in favor of Live Oak on some claims but not all. The trial court awarded Live

Oak a total of $7,016.75 against the City of McComb. Live Oak now appeals.

## FACTS

¶2. Following the statutory process for bidding requirements,[1] the City advertised for bids

---

[1] Miss. Code Ann. § 31-7-13 (Rev. 2010).

to construct three buildings at the McComb Sports Park, a center for baseball and softball fields for the City. Live Oak was the lowest bidder at $252,000 and was awarded the contract. Steve Cox, a McComb architect, drafted the plans for the City and supervised the work through completion. Cox was named as a defendant but was dismissed from the lawsuit on motion for summary judgment.

¶3.    On completion of the project by Live Oak, the City paid the contract price, along with an additional sum of $1,941.60 reflected in a written construction contract change,[2] (change order) agreed upon by Live Oak, Cox, and the City. The contract called for completion of construction 120 days after the "Notice to Proceed"—given by Cox on January 20, 2014— on penalty of $250 per day in liquidated damages if it took longer. Substantial completion occurred on September 19, 2014. The term of construction lasted for eight months rather than four as outlined in the contract. The City did not seek liquidated damages. Live Oak submitted that the City is to blame for the entire 120-day delay and sought related damages in the amount of $135,760.73 above the paid contract price.

¶4.    After a bench trial, the trial court found for Live Oak on some of the claimed contract breaches and awarded a judgment against the City for $4,876.75. Live Oak filed motions under Mississippi Rules of Civil Procedure 52(b) and 59(e) to amend the trial court's finding of facts and final judgment. Subsequently, the order was amended, and a total judgment of $7,016.75 was awarded to Live Oak. On appeal, Live Oak claims that the trial court

---

[2] *See* Miss. Code Ann. § 31-7-13(g).

committed manifest error in not finding the City wholly liable for the breaches it asserted caused the delay and argues that the evidence presented at trial was unrebutted. Further, Live Oak argues the trial court erred in awarding Live Oak an arbitrary amount of damages for the City's liability. For the following reasons, we affirm.

## DISCUSSION

¶5. Live Oak contends that it is entitled to damages above the contract price in light of the delay caused by the City. It specifically highlights the costs and overhead associated with the following: (1) lack of power to the job site; (2) moving the press box from its original location; (3) extra dirt work not originally agreed upon; (4) lintels that were not specified on the architect's plan; and (5) overall delay.

¶6. "The applicable standard of review will not permit that the finding of the trier of fact be disturbed on appeal if there is substantial supporting evidence even if under the same proof we might have found otherwise. The finding of fact may not be set aside unless manifestly wrong." *Bailey v. Worton*, 752 So. 2d 470, 474 (¶9) (Miss. Ct. App. 1999). Where a circuit judge sits without a jury, the deference given is that which is given to a chancellor's findings. *Sweet Home Water & Sewer Ass'n v. Lexington Estates Ltd.*, 613 So. 2d 864, 872 (Miss. 1993). "Findings of fact made by a chancellor which are supported by credible evidence[] may not be set aside on appeal." *Bailey*, 752 So. 2d at 474 (¶9).

> It is settled law that the chancellor is the judge of the weight and worth of the testimony and the court's decree based upon the evidence will not be disturbed unless manifestly wrong. Therefore, when the chancellor is confronted with conflicting testimonies, he determines which has more credibility. Even if this

3

Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong.

*Reed v. Weathers Refrigeration & Air Conditioning Inc.*, 759 So. 2d 521, 524 (¶10) (Miss. Ct. App. 2000) (citation and internal quotation marks omitted). "Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee." *Lee v. S. Miss. Elec. Power Ass'n*, 17 So. 3d 597, 599 (¶7) (Miss. Ct. App. 2009).

¶7. Live Oak points to various contract provisions to support its claim for damages associated with the delay. We highlight the applicable sections:

ARTICLE 10      CHANGES IN THE WORK

§10.1 The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly in writing. If the Owner and Contractor can not agree to a change in the Contract Sum, the Owner shall pay the Contractor its actual costs plus reasonable overhead and profit.

. . . .

§10.3 If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Document or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be subject to equitable adjustment.

ARTICLE 11      TIME

§11.2 If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fires, unusual delay of deliveries, unavoidable casualties or other causes beyond the Contractor's control, the contract time shall be subject to equitable adjustment.

4

### A.    Lack of Power

¶8.    Live Oak contends that it was not given power to the construction site for a period of three months, which was guaranteed by the City and then was forced to rent generators. Live Oak claims the rental caused delay and out-of-pocket expenses that were not foreseen when the bid was made. The City claims that it never guaranteed power and merely offered to make a phone call to Entergy to ask for power.

¶9.    The record indicates that the specifications state that the "[o]wner will provide . . . electrical services to all buildings" but make no mention about providing power to the construction site prior to erecting the buildings. Live Oak points to the minutes taken during the pre-construction meeting where it was noted that "site utilities [were] discussed - provided by owner." Furthermore, Live Oak looks to correspondence between itself and the City, wherein Live Oak complained repeatedly that there was no power at the site and the City responded that "this is in the works."

¶10.    The record is clear that the City never outright stated that the contractor was required to provide its own power to the construction site. However, the contract was never changed to articulate who would be responsible to provide power to the construction site. While there may have been an understanding, there is nothing in the contract that required the City to provide power. The City asked Entergy to provide power to the site for the start of construction, but the City was unsuccessful. The City provided generators as a backup option while the City "worked on it." Live Oak chose not to use the City's generators that were

furnished to them. Here, the trial court held that the City did not breach its contract for lack of power and we cannot find error in its finding.

### B.     Moving the Press Box Location

¶11.   Live Oak contends that because of the fifty-two-day delay in determining where to move the press box, there were costs resulting from the rental equipment and labor that were placed on standby. The trial court, in its amended order, stated that "the City is liable for damages caused by the delay in moving and establishing a location for the Press Box for Field no. 4. and assesses damages in the amount of $2,000."

¶12.   The record makes clear that the relationship between Live Oak and the City became strained as the months went on. In general, it seems the City resisted change orders throughout this project. In fact, there was testimony that the City flat out would not allow them. However, after much back and forth among the parties, one was created for the issue at hand—the delay in determining the press box location. This change order incorporated the additional time and materials needed for the new press box location, was agreed upon by all parties, and paid accordingly. The City, in essence, argues that the change order prevents Live Oak from asking for more than what was submitted for the agreed-upon work order.

¶13.   At trial, Cox testified that he did not believe that the City caused a fifty-two-day delay. And while the original estimate for the work order Live Oak submitted was around $7,000, Cox testified that they made some changes, namely omitted some rolling doors, which brought the estimate to around $2,000. Here, the trial court awarded an additional $2,000

6

for services rendered. Live Oak believes it is entitled to a greater amount in light of having items and labor on standby amounting to $37,712. There is nothing in the record that adequately explains why, despite being on notice of the delay caused by the change of the press box location, Live Oak felt the need to keep resources on standby. Furthermore, having found the City liable, the trial court was within its discretion to award the damages. We cannot find error in the trial court's findings and award.

### C.    Dirt Work

¶14.    Live Oak contends that after the project was essentially completed and after being deemed "substantially completed" it was forced back to the work site for dirt work that was not contemplated in the construction bid. It put forth evidence arguing that actual costs were $2,270. In its order, the trial court found that "Live Oak has proven by a preponderance of the evidence that it was forced to perform dirt work and assess[ed] damages for this breach in the amount of $1500.00." The City contends that it asked for a finished product that included the dirt work and argues that it did not ask for work outside the scope of the contract. The court was not required to accept Live Oak's computation of those damages. In light of the record, we cannot find the trial court erred.

### D.    Lintels

¶15.    According to Live Oak, the design plans, created by Cox, did not show lintels over certain windows and doors, but they later proved necessary. Live Oak said it did not foresee this expense, and therefore it was not included in the contract bid.

7

¶16.   Live Oak explains that:

> [A] lintel is used when you have a door opening that has brick to both sides and above the door. A door frame alone could not support the weight of the bricks, so a piece of flat iron or angle iron is placed along the top of the door frame to hold the weight of the bricks above the door or window frame.

¶17.   Here, the City points to Cox's testimony in which he explained that the lintels "were indicated on sectional drawings . . . . They may or may not have been labeled . . .[,] but it is such a common detail that it is incredible that somebody would bring it up . . . ." Here, the trial court held that Live Oak did not prove "by a preponderance of the evidence that [the City] breached the contract in this regard and as to this issue [found] for [the City]." Given that the testimony differed as to whether lintels should have been more fully incorporated in the contract bid, the trial court chose to believe the City's position, and we cannot find error in its decision.

### E.   Overall Delay

¶18.   Live Oak admits that the trial court awarded actual costs for addressing the myriad of other issues it had with the City regarding construction, including bathroom partitions, door knobs, counter-tops, wall widths, a buried power line, and flooring. However, Live Oak again points to the contract and argues that in addition to actual costs it is owed reasonable overhead and profit.

¶19.   Here, the trial court did not make a finding that the delay was caused by the City; thus, Live Oak was not entitled to overhead damages and profit. There was evidence of bad weather from January to March that added to the delay, and Live Oak's damage calculations

8

did not account for this. Weather-related issues are clearly out of the control of both the City and Live Oak. Furthermore, the record is clear that the claims for breach of contract were rebutted by the City with differing testimony. While there are no specific reasons, the trial court acknowledged the need to reimburse Live Oak and compensated it accordingly. We cannot find error in its findings. For the foregoing reasons, we affirm.

¶20. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**