615 So.2d 568 (1993)
CHRISTIAN METHODIST EPISCOPAL CHURCH
v.
S & S CONSTRUCTION COMPANY, INC.
No. 90-CA-0633.
Supreme Court of Mississippi.
February 11, 1993.
*569 Randolph Walker, Bennie L. Turner, Walker & Turner, West Point, for appellant.
S. Allan Alexander, Tollison Austin & Twiford, Oxford, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
*570 SULLIVAN, Justice, for the court:

THE FACTS
S & S Construction Company (S & S) and Mississippi Industrial College (MIC) entered into two contracts for construction on the campus of MIC, the first for $1,196,218.00, and the second for $150,269.00. Both contracts were signed by Theodore R. Debro, Jr., president of MIC. The contracts provided for progress payments as work progressed. S & S submitted monthly applications for payment for the portion of work completed during that payment period. The architect, Ledbetter Associates, certified on each application for payment that the work had actually been performed. MIC was to retain ten percent (10%) of each progress payment to insure that the work was satisfactorily performed.
Right from the start, the progress payments were late. In June, 1981, Truitt Stockton, president of S & S, contacted Debro and requested that MIC bring all payments up to date. MIC still failed to make the required progress payments on schedule. In September, 1981, Stockton sent Debro notice of S & S' intent to stop construction, pursuant to terms of the contract, on October 12 if all outstanding payments due were not paid. On October 21, when amounts due were still outstanding, Stockton wrote Debro and informed him that construction would be stopped until payment was made and S & S had proof of monies on hand to pay the balance on the contract. Two days later, MIC paid the outstanding balance due of $267,618.00. Debro then wrote to Stockton asking when construction would be resumed. This letter also explained the sources of funding for the project, listing institutional and church funds as 40.7%. S & S still refused to resume construction until assured that progress payments would thereafter be paid in a timely fashion and that MIC and Christian Methodist Episcopal Church (CME) funds were escrowed and available when needed.
In November, S & S was assured by Debro that CME General Secretary of Finance, O.T. Peeples, had placed in escrow funds sufficient for completion of construction. Peeples sent a letter to S & S on November 16, 1981, advising S & S that "C.M.E. Church IS HOLDING THE FUNDS NECESSARY TO COMPLETE THE CONSTRUCTION.... Arrangements have been made for Mr. Debro to pay an amount equal to the percentage required from the church and/or the institution on a regular monthly basis up to the completion of the project."
S & S resumed construction at MIC and continued its work until February, 1982, when MIC notified it that no further funds were available. S & S stopped construction and demanded payment of the balance due for progress payments in the amount of $286,939.00 plus retainages. S & S filed suit against MIC and obtained a default judgment in the amount of $354,979.33. MIC filed for bankruptcy and S & S was paid $39,289.20 by the Louisiana Conference of CME as part of MIC's Chapter 11 plan.
There was undisputed testimony that payments for CME were made by the Secretary of its Department of Finance, O.T. Peeples. CME, at the time of trial, owned at least some of what was formerly MIC and had hoped to use the land and buildings as a training facility for church missionary workers.
S & S filed a complaint for debt and attachment against CME seeking judgment on the ground that CME, through Dr. O.T. Peeples, General Secretary of Finance for CME, wrote a letter to S & S advising them that CME was holding the funds necessary to complete construction of buildings on the campus of MIC. S & S contended that it relied on Peeples' assurance in continuing construction on the MIC campus. CME answered claiming that if Peeples' letter was a guaranty, which CME denied, it was an ultra vires act.
After a trial on the merits, the chancellor found CME liable to S & S for the arrearages under the contract based on principles of equity akin to the doctrine of estoppel in pais. Judgment against CME in the sum of $493,860.44 was granted. After its motion for new trial was overruled, CME perfected *571 its appeal to this Court, requesting determination of the following issues:
1. Whether Peeples' letter of November 16, 1981, constitutes a guaranty under Mississippi law;
2. Whether the November 16, 1981, letter estopped CME from denying liability to S & S;
3. Whether Peeples, who drafted and signed the letter of November 16, 1981, had authority to commit CME to a guaranty obligation;
4. If the letter constituted a guaranty, what was the extent of the obligation assumed under its terms;
5. What weight should the alleged judgment obtained by S & S against MIC by default have in determining the damages in the case at bar; and
6. Whether the chancellor erred in using the judgment against MIC in determining the damages in the case at bar, since the judgment was never put into evidence.

THE LAW

I.

Whether Peeples' Letter of November 16, 1981, Constitutes a Guaranty under Mississippi Law.
CME argued that Peeples' letter did not constitute a guaranty; this is the same conclusion reached by the chancellor, who found CME obligated to S & S based on principles of equity. Even S & S admitted the chancellor did not find the letter constituted a guaranty, but argued that had he so found, he would have been correct. This issue, as presented, provides this Court with nothing to review.

II.

Whether the Letter of November 16, 1981, Estopped CME from Denying Liability to S & S.
The chancellor's determination that CME was estopped from denying liability to S & S is a conclusion of law. In reviewing errors of law, this Court proceeds de novo. Cooper v. Crabb, 587 So.2d 236, 239 (Miss. 1991).
Notwithstanding our respect for and deference to the trial judge, on matters of law it is our job to get it right. That the trial judge may have come close is not good enough.
Cooper, 587 So.2d at 239, quoting UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987).
Equitable estoppel precludes a party from denying a material fact which he has previously induced another to rely upon, whereby the second party changed his position in such a way that he would suffer injury if denial was allowed. Koval v. Koval, 576 So.2d 134, 137 (Miss. 1991). Estoppel is based on "public policy, fair dealing, good faith and justice." Id., citing 28 Am.Jur.2d 647, Sections 27 and 28. See also PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss. 1984). Where it would be substantially unfair to allow a party to deny what he has previously induced another party to believe and take action on, equitable estoppel may be enforced. Koval, 576 So.2d at 138; PMZ Oil, 449 So.2d at 207. Subjective intent to mislead is unnecessary, so long as the acts of the party sought to be estopped, viewed objectively, were calculated to and did mislead the other party. Koval, 576 So.2d at 138; PMZ Oil, 449 So.2d at 208.
The party asserting equitable estoppel must show that he has changed his position, to his detriment, in reliance upon the conduct of another. PMZ Oil, 449 So.2d at 206, citing Birmingham v. Conger, 222 So.2d 388, 392-393 (Miss. 1969); Ivy v. Grenada Bank, 401 So.2d 1302, 1303 (Miss. 1981); Thomas v. Bailey, 375 So.2d 1049, 1052 (Miss. 1979). Where one of two innocent parties will suffer a loss from the default or fraud of a third party, the party in the best position to protect himself should bear the loss. Western Cas. and Sur. Co. v. Honeywell, Inc., 380 So.2d 1385, 1389 (Miss. 1980); XYOQUIP, Inc. v. Mims, 413 F. Supp. 962, 967 (N.D.Miss. 1976). The burden of proof is on the party pleading equitable estoppel. Chapman v. *572 Chapman, 473 So.2d 467, 470 (Miss. 1985); Hathorn v. Illinois Cent. Gulf R. Co., 374 So.2d 813, 817 (Miss. 1979).
S & S successfully showed that it changed its position, to its detriment, in reliance upon the conduct of CME. S & S had stopped construction at MIC and only resumed work after receiving CME's letter stating that funds necessary for completion of the construction were being held by the church and that arrangements had been made for MIC to pay the percentage required on a monthly basis until completion of the project. S & S changed its position in reliance on CME's assurance and suffered detriment  it was not paid for the work performed. Although CME claims it was an innocent party injured by Peeples' assurance to S & S, CME, as the entity who placed Peeples in his position of Secretary of Finance, was in a better position than was S & S to protect itself from losses resulting from Peeples' conduct. S & S was seeking to protect itself when it asked for assurance that funds were on hand for completion of the construction project. It follows that CME should bear the loss resulting from Peeples' assurance.
S & S claims this assurance from CME promised full payment to S & S. CME claims that if any promise was made, it was only that the church's percentage of the contract price would be paid. (CME argues this is 25%; a letter from Debro to Stockton shows this percentage is 40.7.) Viewed objectively, as it must be since no subjective intent to mislead is necessary, the assurance seems to say that although MIC would only pay the 40.7% on a monthly basis, CME had in hand the total amount S & S would be due upon completion of the project. The assurance, again viewed objectively, was calculated to and did mislead S & S to believe that all monies necessary for completion of the construction project were on hand. The doctrine of equitable estoppel should be enforced because it would be substantially unfair to allow CME to deny this assurance upon which S & S relied to its detriment.
CME also argues that the chancellor's finding of equitable estoppel can not be affirmed as S & S did not assert this theory in its pleadings. However, the purpose of a pleading "is to give notice, not to state facts and narrow the issues as was the purpose of pleadings in prior Mississippi practice." M.R.C.P. 8, Comment. The complaint of S & S clearly put CME on notice that S & S changed its position, detrimentally, in reliance on the assurance of CME that funds for completion of the construction project were in hand. This covers all elements of equitable estoppel. That is all that our rules of civil procedure require. There was no error in the chancellor's conclusion of law that the doctrine of equitable estoppel should be enforced. CME should be estopped from denying liability to S & S if Peeples was authorized to bind CME.

III.

Whether Peeples, Who Drafted and Signed the Letter of November 16, 1981, Had Authority to Commit CME to a Guaranty Obligation.
The chancellor specifically found that the letter was not a guaranty. Instead, he based the liability of CME on equitable estoppel: the chancellor found that Peeples' untrue statements in the letter were imputed to CME either by actual or apparent authority. The authority of Peeples must still be addressed to determine whether his letter was sufficient to preclude CME from subsequently denying liability to S & S.
CME did not dispute that Peeples was its agent. Rather, it argued Peeples lacked actual or apparent authority to bind the church because the act was ultra vires.
Under Mississippi agency law, "a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority." Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1180 (Miss. 1990), quoting Ford v. Lamar Life Ins. Co., 513 So.2d 880, 888 (Miss. 1987). Pursuant to the equitable doctrine of estoppel, a principal is liable for the misrepresentations or frauds of his agent so long as the agent was acting within the *573 scope of his authority, even if the principal had no knowledge thereof and did not benefit therefrom. Andrew Jackson, 566 So.2d at 1180. If an agent acted within his apparent authority, the issue of actual authority need not be reached. Id., citing Baxter Porter & Sons Well Servicing Co. Inc. v. Venture Oil Corp., 488 So.2d 793, 796 (Miss. 1986).
[T]he principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be so far as third persons are concerned, the apparent powers of an agent are his real powers.
Andrew Jackson, 566 So.2d at 1180-81, quoting Steen v. Andrews, 223 Miss. 694, 697-98, 78 So.2d 881, 883 (1955). The three-pronged test for recovery under a theory of apparent authority requires a showing of (1) acts or conduct of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) detrimental change in position as a result of reliance. Andrew Jackson, 566 So.2d at 1181.
It is the duty of the fact finder to determine whether the evidence sufficiently meets the three-pronged test. Andrew Jackson, 566 So.2d at 1181, citing Venture Oil Co., 488 So.2d at 796; College Life Ins. Co. of America v. Byrd, 367 So.2d 929, 930 (Miss. 1979); Clow Corp. v. J.D. Mullican, Inc., 356 So.2d 579, 593 (Miss. 1978). This finding will not be disturbed unless clearly contrary to the overwhelming weight of credible evidence when viewed in the light most favorable to the verdict. Andrew Jackson, 566 So.2d at 1181.
The conduct of CME indicating Peeples' authority was: naming him Secretary of the Department of Finance, charging him with the duty to write checks for the church, and providing him with CME Department of Finance letterhead. In other words, as stated by the chancellor, CME "clothe[d] him with the indicia of being a person who knows and may make statements on such matters." The second prong, reasonable reliance stemming from CME's acts, is also supported by the evidence. Debro, president of MIC, who testified that he was familiar with the policies of both CME and MIC, went to Peeples to obtain assurance for S & S. If Debro believed Peeples was authorized to give such an assurance, how can it be concluded that S & S should have known otherwise? S & S acted reasonably in relying upon an assurance that it would be paid when that assurance came from the Secretary of the Department of Finance of CME, written on CME Department of Finance letterhead. Finally, S & S, as a result of this reliance, changed its position detrimentally by continuing construction of the project on the MIC campus. The three-pronged test for recovery under a theory of apparent authority was indeed met. The chancellor did not err.
Although Peeples' assurance that CME had on hand the monies necessary for completion of the MIC construction project was false, CME is bound by his assurance as it was within the scope of his apparent authority This is so even had CME not benefitted from Peeples' act, which it clearly did. As Peeples was acting within the scope of his apparent authority, it is not necessary to reach the issue of actual authority.
CME's argument that it can not be liable via the assurance made by Peeples as it was an ultra vires act is without merit. Our statutory and case law prohibits this defense. Miss. Code Ann. § 79-4-3.04 (Supp. 1992); Bryant Constr. Co. v. Cook Constr. Co., 518 So.2d 625, 630 (Miss. 1987). The chancellor's finding that Peeples had apparent authority to offer the assurance to S & S is not contrary to the overwhelming weight of the evidence, when that evidence is viewed in the light most favorable to the chancellor's decision. It follows that we must affirm this determination as well as the chancellor's legal conclusion that equitable estoppel should be enforced.

*574 IV.
If the Letter of November 16, 1981, Constituted a Guaranty, What Was the extent of the Obligation Assumed Under Its Terms?
Again, the chancellor did not find a contractual guaranty by virtue of Peeples' letter. CME's liability to S & S was based on equitable estoppel: CME is estopped from denying liability because S & S reasonably relied, to its detriment, on the assurance given by Peeples. The extent of the obligation assumed by CME is dependent upon Peeples' authority. As discussed above, this was for the chancellor to determine and his finding will not be set aside unless contrary to the overwhelming weight of the evidence viewed in the light most favorable to the chancellor's decision. Andrew Jackson, 566 So.2d at 1181. The chancellor found that Peeples assured S & S that CME had on hand all monies necessary for completion of the construction project at MCI. Furthermore, the chancellor found that Peeples acted within the scope of his apparent authority and that S & S was reasonable in its reliance on this assurance. CME's obligation pursuant to Peeples' assurance extended to all monies necessary for project completion.

V.

What Weight Should the Alleged Judgment, Obtained by S & S Against MIC by Default, have in Determining the Damages in the case at Bar?
It appears that CME actually argued the evidence does not support a judgment in the amount of that awarded. CME stated in its brief that the evidence supports a judgment of only $210,752.00.
"On appeal this Court will not reverse a Chancery Court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings." Cooper v. Crabb, 587 So.2d 236, 239 (Miss. 1991), citing Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987); Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Gilchrist Machinery Co., Inc. v. Ross, 493 So.2d 1288, 1292 (Miss. 1986). "Whatever the measure of damages, they may be recovered only where and to the extent that the evidence removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty." Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990). When there is no basis in evidence for the amount of damages awarded, this Court can adjust the amount of damages awarded to correspond to the evidence and render such judgment. See Boyington v. State, 389 So.2d 485, 491 (Miss. 1980); Caskey v. Treadwell, 299 So.2d 691, 693 (Miss. 1974); Miss. Code Ann. § 11-3-7 (1972), as Amended.
The chancellor found that the amount of the judgment against CME should be a total of the amount of the previous judgment against MIC plus statutory interest to date, less the amount paid to S & S as a result of MIC's bankruptcy proceeding, or $493,860.44, plus interest at eight percent (8%) per annum from the date of entry of the judgment. There is insufficient evidence to support this finding of the chancellor. The record shows that the amount of the judgment against MIC was $354,979.33. The record does not reflect, however, the date of the judgment, therefore there is no basis in evidence for damages in the amount of interest on the judgment. S & S received $39,289.20 pursuant to MIC's bankruptcy plan, which would reduce the amount of damages to $315,690.13.
Evidence presented at trial provides a more accurate measure of damages than those based on the prior judgment against MIC. The two applications for payment which remained unpaid at trial were in the amounts of $105,247.00 and $84,432.00. Interest on those amounts (pursuant to contract) from the date due to the date of trial was $63,182.80 and $50,224.32, respectively. The amount of retainage which had been withheld totaled $97,260.00, with interest from the date of default in the amount of $57,855.04. The total of these amounts is $458,201.16. Subtracting the $39,289.20 received pursuant to MIC's bankruptcy plan brings the amount to $418,911.96. This measure of damages being *575 more accurate than either the amount determined by the chancellor or the amount calculated with reference to the previous judgment against MIC excluding interest on the judgment, we reverse on this issue and render judgment for S & S in the amount of $418,519.32, an amount supported by the evidence in this record.

VI.

Whether the Chancellor Erred in Using the Judgment against MIC in Determining the Damages in the Case at Bar since the Judgment was Never Put into Evidence.
Our disposition of the previous issue makes this assignment of error moot.
AFFIRMED IN PART; REVERSED IN PART AND JUDGMENT RENDERED IN FAVOR OF S & S CONSTRUCTION COMPANY, INC., IN THE AMOUNT OF $418,519.32.
HAWKINS, C.J., PRATHER, P.J., PITTMAN, McRAE, ROBERTS and SMITH, JJ., concur.
BANKS, J., concurs in part and dissents in part by separate written opinion joined by DAN M. LEE, P.J.
BANKS, Justice, concurring in part, dissenting in part:
I concur with the result reached by the majority to the extent that it affirms the chancellor's finding of liability on the part of Christian Methodist Episcopal Church (CME) based on the doctrine of equitable estoppel. My point of departure is the calculation of damages. Primarily, the point of difference is the amount of retainage and interest thereon due from CME. In my view, only so much of the retainage as became due as a result of work performed after November 16, 1981, the date of the letter assurance, is chargeable to CME.
Under the doctrine of equitable estoppel, S & S should not be compensated in an amount greater than the loss incurred due to its reliance upon the assurance of CME. See, e.g., Adams v. Petrade International, Inc., 754 S.W.2d 696, 710 (Tex. App. 1988); and Gagne v. Betran, 43 Cal.2d 481, 275 P.2d 15, 21-22 (1954). The general common law rule is that equitable estoppel extends only so far as may be necessary to protect from loss the party entitled to assert it and to put the parties in the same relative position they would have occupied if the predicate of the estoppel had never existed. See, e.g., Louisville Joint Stock Land Bank v. McMurry, 278 Ky. 238, 128 S.W.2d 596, 600 (1939); and Peskin v. Phinney, 182 Cal. App.2d 632, 6 Cal. Rptr. 389, 391 (1960). Adams and Gagne are illustrative of this rule's application. In Adams, plaintiff brought suit against defendant and defendant's partner for failure to honor a promise to purchase oil. The trial court awarded plaintiff approximately $3,000,000 in damages, which represented the difference between the agreed-upon price and the market price of the oil. Upon review, the Texas Court of Appeals reduced the damages award to $409,231  that amount which flowed directly from the breached promise. 754 S.W.2d at 710. It held that "[t]he damages recoverable in cases of promissory estoppel are the amount necessary to restore the injured party to the position he would have been in had he not acted in reliance on the other party's promises." Id. In Gagne, the California Supreme Court was presented with a suit brought by a purchaser of property against a test hole driller, who reported to the purchaser that the fill on the property was already at a depth desired by the purchaser. The driller's representation proved untrue. The Court held that the proper measure for plaintiff's damages was the actual losses suffered because of the misrepresentation. 275 P.2d at 22.
Full compensation for the work performed after November 16, 1981, is what is due. The unpaid total billed for work performed after that date, without deduction for the ten percent retainage, is $210,752. Interest on these bills at the legal rate of eight percent from the time due until the payment of $39,289.20 was paid amounts to $123,840.46, allowing interest on the retainage from the date that the last payment was due. Interest on the remaining amount from the payment, June 29, 1989, *576 until the date of judgment amounts to $9,507.98. The judgment below should be reformed to the amount of $210,752, less the $39,289.20, plus prejudgment interest in the amount of $133,348.44, for a total of $304,811.441.
LEE, P.J., joins this opinion.