# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2026

Lyle W. Cayce
Clerk

No. 24-60466

―――――――――

RONALD COOPER; SHIRLEY COOPER,

*Plaintiffs—Appellants*,

*versus*

STATE FARM FIRE AND CASUALTY COMPANY; JOHN DOES 1–10,

*Defendants—Appellees*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-100

―――――――――――――――――――――――――

Before JONES, SOUTHWICK, and OLDHAM, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

This dispute involves coverage under a homeowners insurance policy that excluded damage caused by off-premises sewage. The district court granted summary judgment for the insurer after the homeowners failed to create a dispute of fact about the source of the sewage. We apply Mississippi law to the issues before us, and that law requires we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Shirley and Ronald Cooper moved into their newly built home in Madison, Mississippi. The Coopers installed a "pressurized or

forced sewer main system" to handle sewage coming from the home. The system uses a series of PVC pipes throughout the home to collect wastewater in a grinder pump station. The waste is ground up and pumped away from the home to a utility line.

In 2022, Shirley and Ronald Cooper returned to their home from choir practice to find sewage flowing up through their shower and tub drains into several rooms of their home.

At the time of the calamity the Coopers had a homeowners policy with State Farm Fire and Casualty Insurance Company. The policy provided for coverage to the dwelling (Coverage A), as well as to the personal property of the named insureds (Coverage B). Relevant here, the policy excluded coverage for water and sewage from "outside the residence premises."

SECTION I — LOSSES NOT INSURED

2. We will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events . . . regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event . . . occurs on or off the residence premises . . . or occurs as a result of any combination of these:

. . .

c. Water, meaning:

. . .

(7) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area . . . .

In addition to the policy's original coverage, the Coopers had purchased prior to the incident an endorsement for "Back-Up of Sewer or Drain" ("BUSD"). The endorsement protected against loss caused by off-premises sewer or water and had a dollar limit.

> We will pay for accidental direct physical loss to the dwelling and covered personal property located within the dwelling, caused by back-up of water or sewage, . . . directly and immediately caused solely by water or sewage: (1) from outside the residence premises plumbing system that enters through a sewer or drain located inside the interior of the dwelling; or (2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the dwelling designed to remove subsurface water drained from the foundation area.

The Coopers immediately began cleaning up the sewage. They contacted a plumbing company who instructed them on how to stop the flow of the sewage into the home. The Coopers then contacted a restoration company who agreed to assess the damage the next morning.

The Coopers also contacted State Farm to initiate a claim. State Farm assigned Adam Dilley, a field adjuster, to investigate the claim. He reviewed the Coopers' policy and visited their home. The parties dispute what happened next. One dispute is that Shirley Cooper insists that Dilley told them certain replacements would be covered. Dilley characterized his comments as "pointing out what[] [was] damaged," and what "probably shouldn't stay in the house." Dilley testified that the plumber told him the water originated off the premises. Shirley Cooper, on the other hand, does not recall Dilley's conversation with the plumber, or that Dilley was investigating the source of the sewage in general. She instead testified that they were told "several times" their coverage would apply "[b]ecause th[e] pipe cracked on [their] premise[s]."

No. 24-60466

On May 18, State Farm sent Richard Zimmerman of Wright Plumbing to inspect the Coopers' sewage system. Zimmerman concluded "the sewage that flooded the Coopers' home on May 6, 2022, derived from the City's main sewer line off-premises." State Farm paid the Coopers according to their dollar-capped BUSD endorsement on June 7, 2022.

Dilley was later replaced as adjuster by Brian Lindsay. On June 23, Lindsay contacted Shirley Cooper and explained that the policy would cover the incident because it had been confirmed that the source was a burst pipe on their property. That same day, Lindsay left a voicemail explaining that "after further review of [the] policy the coverage is not going to be approved" and "it's going to remain as backed up sewer and drain." The Coopers then received a formal letter confirming that their primary coverage would not apply.

The Coopers sued State Farm and Dilley in state court. Their claims included breach of contract, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, bad faith, negligence, and intentional infliction of emotional distress. State Farm removed the case to the United States District Court for the Southern District of Mississippi, and the Coopers voluntarily dismissed Dilley from the suit. State Farm then moved for summary judgment. The district court granted State Farm's motion.

The district court concluded that the language of the policy unambiguously excluded recovery for damage caused by "water or sewage from outside the residence premises." Thus, State Farm did not breach its contract as the Coopers failed to show a fact question regarding the source of the sewage. In addition, the district court entered judgment rejecting the Coopers' detrimental reliance claims. It concluded that the Coopers failed to offer "arguments suggesting apparent authority" or "create[] a jury question over reasonable reliance." As a result, "Dilley's statements —

4

while confusing and frustrating for the Coopers — cannot create coverage where none exists." The Coopers timely appealed.

## DISCUSSION

On appeal, the Coopers challenge the district court's grant of summary judgment on their claims of detrimental reliance and breach of contract. This court reviews a grant of summary judgment *de novo*, "applying the same standard as the district court." *Carroll v. Metro. Ins. & Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view evidence and factual inferences "in the light most favorable to the nonmoving party." *Halle v. Galliano Marine Serv., L.L.C.*, 855 F.3d 290, 293 (5th Cir. 2017).

The Coopers argue that the district court erred in holding (1) Dilley's representations did not bind State Farm to pay for the work, and (2) there was no genuine dispute of material fact as to the source of the sewage backup. We consider each argument in that order.

### I.   Dilley's Representations

The Coopers argue that during Dilley's walkthrough, he "told the Coopers that there was coverage, and approved of all the remediation work that was being done on the premises by two different contractors." Thus, a jury could find that Dilley bound State Farm to cover removal and repair work, even if the it not find that Coverage A applied to the damage. The Coopers allege that Dilley acted with actual or apparent authority in binding State Farm.[1] Though the Coopers mention actual authority in passing, they

---

[1] Though the district court acknowledged "[t]he Coopers never state whether they pursue their claim under actual or apparent authority," the district court nevertheless

cite no evidence in the record establishing Dilley had actual authority. The briefing on apparent authority is slightly more developed, so we analyze that theory.

"Under Mississippi law, an agent's representations that purport to modify the insurance contract can bind an insurer only if the statements were made pursuant to actual or apparent authority." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 439 (5th Cir. 2007). "A policyholder seeking to recover based on an agent's *apparent authority* must show three things: (1) acts or conduct on the part of the principal indicating the agent's authority; (2) reasonable reliance on those acts; and (3) a detrimental change in position as a result of such reliance." *Id.* (emphasis added). *Leonard* could be read to mean an agent's statements may override policy language when made pursuant to apparent authority. Yet *Leonard* itself shows that is not so. Even assuming there is evidence in our record to create jury questions on the first and third elements, the claim fails unless the Coopers can create a jury question as to reasonable reliance.

In Mississippi, "a party's reliance on representations by an insurance agent that contradict the policy language is unreasonable." *Leonard*, 499 F.3d at 438. Here, the Coopers' primary policy specifically excluded coverage for sewage originating "outside the residence premises." As to their knowledge of policy language, an insured has an "affirmative duty to read" their insurance policy, and regardless of whether they do so, they are held to "constructive knowledge of its contents." *Leonard*, 499 F.3d at 438. Aside from this imputed knowledge, Cooper admits actual knowledge in

---

evaluated the claims under both theories. *Cooper v. State Farm Fire & Cas. Co.*, No. 3:23-cv-100, 2024 WL 4907402, at *8–10 (S.D. Miss. Aug. 28, 2024).

briefing: "Dilley explained . . . that there was coverage but it could possibly be under [BUSD] versus Coverage A."[2]

Further, even if Dilley said that Coverage A applied "[b]ecause this pipe cracked on your premises," that assertion directly contradicts the unambiguous language of the policy. Aside from the general contradiction that Dilley purported to approve remediation work through coverage that did not otherwise exist, he also misstated what caused the exclusion to apply. Similar to the statements made by Brian Lindsay, Dilley represented that coverage was dependent on the location of the *cause* of the backup, *i.e.*, the "cracked pipe" within the on-premises grinder pump. To the contrary, Coverage A is dependent on the *source* of the sewage — "water or sewage *from outside* the residence premises."

An agent's representations "can modify the policy only if it is ambiguous; when the contractual language is plain, there can be no modification." *Leonard*, 499 F.3d at 438. In *Leonard*, a policyholder argued that an agent's statement — representing that the Leonards would not need additional flood insurance — modified their homeowners policy to remove an exclusion for water damage. *Id.* at 439. In rejecting that argument, we held that the Leonards' reliance on the agent's statements "was objectively unreasonable in light of the policy language clearly excluding water damage." *Id.* at 440. Here, the Coopers do not argue the contract is ambiguous — nor is it. All parties agree that off-premises water is excluded under Coverage A,

---

[2] The record otherwise reflects that the Coopers were on notice of the exclusion. With respect to her motive for purchasing the BUSD endorsement, Shirely Cooper testified that her agent informed her that "it's something good to have if something happens . . . with the city sewage and it comes into your house or whatever." Additionally, she testified that, on the night of the calamity, State Farm told her about the BUSD endorsement.

and the Coopers even conceded before the district court that "if the sewage backup came from outside the premises, the coverage is provided by the [BUSD] Endorsement." Thus, as was the case in *Leonard*, "in light of the policy language clearly excluding" coverage for off-premises sewage and water, the Coopers' reliance on Dilley's statements "was objectively unreasonable."

We will now consider the three court opinions that the Coopers argue support their argument that Dilley's statements bind State Farm.

In the first, an adjuster visited a damaged property and agreed the insured "should repair the buildings on a cost plus ten per cent basis," then notified the insurer. *Hewett-Williams & Williams Constr. Co. v. Cap. Fire Ins. Co. of Cal.*, 188 F.2d 241, 243 (5th Cir. 1951). The insurance company's vice president "inspected the property[] and agreed with [the] adjustment." *Id.* On appeal, this court held there to be "no merit in the contention that appellee's adjuster . . . had no authority to adjust the loss." *Id.* at 244. *Hewett-Williams* was a case about actual authority, relying on statutory duties imposed on agents of insurance companies under Section 5706 of the Mississippi Code of 1942.[3] *Id.* at 243. The opinion does not mention

---

[3] That section was recodified as Section 83-17-1 in the 1972 Code. *See* MISS. CODE ANN. § 83-17-1 (1972); *Dearman v. Prudential Ins. Co. of America*, 727 F.2d 479, 480 n.1 (5th Cir. 1984). The relevant language defined "agent" as follows:

> Every person who solicits insurance on behalf of any insurance company, or . . . who shall examine or inspect any risk, or . . . who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, . . . shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy of contract.

*Dearman*, 727 F.2d at 480 n.1; *see Pittman v. Home Indem. Co.*, 411 So.2d 87, 89 (Miss. 1982).

apparent authority. The evidence was clear that the adjustment was "at the direction and with the approval of appellee's agents." *Id.* at 244. As the district court concluded here, "that is different from saying the adjuster had actual (or even apparent) authority to extend coverage beyond the policy." Similarly, "the Coopers offer[ed] neither evidence nor argument that State Farm expressly approved Dilley's purported statements."

In another authority relied on by the Coopers, the insurer's agents enticed potential customers to let their life insurance plans with another insurer lapse in favor of the insurer's plan. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1174 (Miss. 1990). Andrew Jackson's agents made guarantees that those who enrolled in the program "would be covered (insured) 'immediately' and unconditionally" upon completing an application and signing their payroll deduction card. *Id.* (emphasis omitted). Willie and Jerlean Williams signed up, but when Jerlean died a few weeks later, the insurance company refused to pay and later denied coverage altogether. *Id.* at 1175–76.

While apparent authority is discussed in *Andrew Jackson*, the discussion is not applicable here. The apparent authority analysis centered only on whether the agents had apparent authority to enter into a contract,

---

The language apparently did not change until 2001, where the language about a person's being an agent when engaged in adjusting regardless of the "conditions or stipulations in the policy" disappeared. *Compare* 2001 Miss. Laws ch. 510, § 31, *with* 1989 Miss. Laws ch. 543, § 1 (containing only a slight revision to the 1942 Code language). The relevant current language simply defines an "agent" as "an insurance producer as defined in this section"; in turn, an "insurance producer" is "a person required to be licensed under the laws of this state to sell, solicit or negotiate insurance." MISS. CODE ANN. § 83-17-1(a), (f) (1972). The elimination of the statutory command that an agent's actions override the conditions of the policy strengthens the caselaw that there cannot be apparent authority to nullify a clear bar to coverage under the policy.

and the court did not discuss reasonable reliance in the context of altering an existing contract. *Id.* at 1180–82. Moreover, in *Andrew Jackson*, the "contract which limit[ed] the authority of its agents to mere solicitation of applications [was] not available for public inspection." *Id.* at 1182. "[U]ntil the point a policy was actually put in [the employees'] hand[s], there wasn't any way for them to tell if [he] was [not informing] them [about attached conditions such as the date on which the policies became effective]." *Id.* at 1182 (alterations in original). Put simply, the sole source of information for the plaintiffs in *Andrew Jackson* was the representations made by the agents. *Id.* at 1175, 1182. Here, the Coopers had a copy of their insurance policy to compare with Dilley's statements.

In the final authority the Coopers present, the plaintiffs sought to bind the insurer to an automobile policy they entered into with the insurer's agent. *McPherson v. McLendon*, 221 So.2d 75, 76 (Miss. 1969). The insurer sought to nullify the existence of a contract through the fact that the agent had restricted authority to bind the company. *Id.* The Mississippi Supreme Court held the plaintiffs presented a jury question on apparent authority because "[t]he restrictions and limitations existing upon the authority of a general agent as between such agent and the company are not binding upon policy holders" if the policyholders did not have knowledge of those limitations. *Id.* at 79. Here, State Farm had no relevant limitations or restrictions in place to limit its agents' authority.

None of these authorities supports that Dilley's statements that would have altered the contract were binding on State Farm. Under Mississippi law, the Coopers had constructive knowledge of what was covered under their policy with State Farm. Therefore, regardless of whether or not the Coopers understood Dilley to have the authority to determine coverage, their reliance on his representations was unreasonable as a matter of law.

No. 24-60466

While we respect the unfortunate nature of events presented in this case, we may not allow "Dilley's statements — while confusing and frustrating for the Coopers — [to] create coverage where none exists." As a result, we find no error in the district court's grant of summary judgment as to the agent's authority.

## II.    *Source of the Sewage*

We now address the Coopers' argument that summary judgment was improper as to the source of the sewage. First, they rely on Lindsay's initial determination that the damage would be covered under the primary policy. The problem with that position is that Lindsay informed the Coopers only that the utility company had confirmed the "burst pipe was located on [their] property." Though the pipe that burst was said to be on the property, Lindsay did not identify the source of the sewage that then came out of the break.

Next, the Coopers allege that the City of Canton's denial of liability precluded summary judgment for State Farm. After the Coopers filed a claim with the City of Canton, the Mississippi Municipal Service Company investigated the incident and wrote to the Coopers denying liability. The letter stated that the main sewer line had not surged, and that the backup was a result of "issues with [the] grinder pump." While the letter confirms that the failure of the grinder pump on the Coopers' property contributed to the backup of sewage, it does not create a fact question as to the source of the sewage.

The Coopers also rely on the report of a plumber who inspected the Coopers' sewer system. Here, the district court correctly concluded that the plumber's observations were "irrelevant" as the "inspection came two months after [the plumber] repaired the cracked joint."

According to State Farm's expert report:

11

No. 24-60466

> [I]t is impossible for sewer water from on-premises to have backed up into the home and flooded a portion of the first floor when no plumbing fixtures were in use. The backup of the sewer water came from sewage in the subdivision's pressurized system that flowed into the home through the failed grinder part system into the home's central PVC pipe that led to the home's plumbing fixtures and resulted in the sewage flood.

There was no genuine dispute of material fact as to the source of the sewage. Summary judgment to State Farm was proper.

AFFIRMED.

No. 24-60466

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

Ronald and Shirley Cooper purchased an insurance product to cover one of the most disgusting nightmares any homeowner could imagine: the overflow of raw sewage into their home. When that nightmare became a reality, the Coopers promptly informed their homeowners' insurance company, State Farm. An adjuster inspected the home, recommended repairs, and promised the Coopers that State Farm would cover them.

State Farm told its customers to kick rocks. The Coopers refused to take no for an answer, so State Farm haled them into federal court. The district court, and my esteemed colleagues in the majority, say State Farm is entitled to judgment as a matter of law. In my view, however, the insurer has not come close to carrying its burden, and it should not be allowed to renege on the promises it made to the Coopers. I respectfully dissent.

I

A

Shirley and Ronald Cooper[1] built a home in Madison, Mississippi, during 2018 and 2019. The Coopers purchased insurance from State Farm to protect their new home. That policy included an exception from Coverages A and B for damage caused by "sewage from *outside* the residence premises plumbing system." ROA.349 (emphasis added). The Coopers' broker also convinced them to add an additional endorsement for "Back-Up of Sewer or Drain," which would pay up to five percent of their Coverage A if their dwelling was damaged by off-premises sewage.

_____

[1] Mr. Cooper passed away during this litigation. *Cooper v. State Farm Fire & Cas. Co.*, No. 3:23-CV-100-DPJ-ASH, 2024 U.S. Dist. LEXIS 217849, at *1 n.1 (S.D. Miss. Aug. 28, 2024).

13

On May 6, 2022, the Coopers returned home after choir practice to find raw sewage flowing up from their shower drain into two bedrooms, three bathrooms, the keeping room, the family room, the kitchen, the laundry room, the pantry, several hallways, and the garage. The Coopers tried to soak up the sewage with bath towels, blankets, comforters, and anything else they could find. The Coopers then made several calls: to a plumber to stop the sewage flow, to State Farm to initiate a claim, and to 911 Restoration to perform mitigation.

On May 9, State Farm asked field adjuster Adam Dilley to investigate the claim. Dilley immediately reviewed the Coopers' policy "when [he] received the assignment." ROA.708. Dilley walked through the Coopers' home and offered comments on the damage. It is undisputed that Dilley promised Ronald that a certain closet would not need to be replaced. It is also undisputed that Dilley told the Coopers and their repair contractor, Richard Sims, that the kitchen's custom cabinets needed to come out. According to Shirley Cooper and Sims, Dilley also identified which areas would receive demolition approval and which would not. Shirley Cooper also maintains that Dilley told them certain replacements would be covered. The Coopers did precisely as they were told—they made the repairs Dilley directed (*e.g.*, the custom cabinets) and did not make the repairs Dilley denied (*e.g.*, the closet).

On May 18, State Farm sent Richard Zimmerman of Wright Plumbing to investigate the source of the sewage. Zimmerman concluded that the sewage originated from the city sewer line. After yet another back-and-forth exchange about coverage confusion, a State Farm agent informed the Coopers that their claim was excluded from Coverage A.

No. 24-60466

B

The Coopers sued State Farm[2] in Mississippi state court for breach of contract and equitable estoppel. State Farm removed the case to federal court. State Farm then moved for summary judgment.

At summary judgment, both State Farm (the movant) and the Coopers (the non-movants) pointed to the text of the policy. It is undisputed that the Coopers met their initial burden to show that their claim fell within Coverage A. That is because Coverage A provides: "*We* [State Farm] will pay for accidental direct physical loss to the property . . . ." ROA.344. So the burden shifted to State Farm to prove an exclusion to Coverage A. State Farm then pointed to the following exclusion to Coverage A:

> (7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; . . . .

ROA.348–49. The district court held that State Farm met its burden as a matter of law to invoke the exclusion and entered summary judgment for the insurance company. The Coopers timely appealed.

II

First, I (A) discuss the applicable legal standards. Then I (B) identify two genuine issues of material fact that State Farm cannot overcome and that hence preclude summary judgment in the insurer's favor. Then I (C) conclude with the majority's counterarguments.

---

[2] The Coopers also sued Dilley but subsequently dismissed their claims against him. ROA.265.

No. 24-60466

A

The applicable legal standards all favor the Coopers. As the non-movants at summary judgment, the Coopers are entitled to resolution of all disputed facts in their favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). As to their contract claim, because all agree the damage falls within the Coopers' "physical loss" policy, it is State Farm's burden to prove that the off-premises sewage exclusion applies. *See Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 642 (Miss. 2013); *see also Penthouse Owners Ass'n v. Certain Underwriters at Lloyds, Lond.*, 612 F.3d 383, 386 (5th Cir. 2010). To limit coverage, the "[l]anguage in exclusionary clauses must be 'clear and unmistakable,' as those clauses are strictly interpreted." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)). State Farm "is bound by the actions of its agent [Dilley] within the scope of that agent's real or apparent authority." *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987). Where the facts are in dispute, the jury must decide the scope of authority—here, whether Dilley was acting within the scope of his employment when he indicated that the sewage exclusion would not limit the Coopers' coverage. *See* Couch on Insurance §§ 48:67, 239:111 (3d ed. 1995); Jeffrey Jackson & D. Jason Childress, Miss. Ins. Law & Prac. § 5:6 (2025 ed.).

But that's not all. The Coopers also invoked equitable estoppel for a remedy above and beyond the coverage to which they are contractually entitled.[3] Under Mississippi law, equitable estoppel provides for recovery

---

[3] The Mississippi cause of action is called "equitable estoppel," which may be used either as a cause of action or as a defense. *Compare Christian Methodist Episcopal Church v. S & S Constr. Co.*, 615 So. 2d 568, 571–72 (Miss. 1993) (cause of action); *PMZ Oil Co. v. Lucroy*, 449 So. 2d 201, 204–05 (Miss. 1984) (cause of action), *with ACE Am. Ins. Co. v. Hetsco, Inc.*, 393 So. 3d 1015, 1027 (Miss. 2024) (defense). Here, the Coopers bring their

No. 24-60466

against a principal when a plaintiff reasonably relies on an agent's statement to his detriment. *See Christian Methodist Episcopal Church v. S & S Constr. Co.,* 615 So. 2d 568, 571–573 (Miss. 1993). To bring such a claim, the plaintiff must demonstrate (1) acts or conduct of the principal indicating the agent's authority that the plaintiff reasonably relied on, (2) a detrimental change in position as a result of that reliance, and (3) statements of the agent that the plaintiff reasonably relied on. *Ibid.*; *see also* COUCH, *supra*, § 101:9.

B

State Farm failed to overcome two genuine disputes of material fact: (1) the scope of the sewage exclusion as liquidated by Dilley, and (2) Dilley's explicit instructions to undertake costly repairs. So the Coopers should have survived State Farm's motion for summary judgment.

1

As to the exclusion clause, it is *State Farm's* obligation—and hence Dilley's obligation—to show it applies. *See Corban*, 20 So. 3d at 609. Again, Dilley read the policy before he arrived at the Coopers' home. ROA.708. So when Dilley arrived, he presumably knew that any uncertainty would be resolved in favor of coverage. Dilley presumably also knew that if State Farm wanted to rebut that presumption, it would be Dilley's obligation to prove the sewage originated outside the Coopers' home.

It is undisputed that State Farm cannot carry that burden. Remember, State Farm sent Dilley to the Coopers' home to make coverage decisions on May 9. But it is also undisputed that State Farm did not know the origin of the sewage on May 18—the day when the insurer sent Zimmerman to the

---

equitable estoppel cause of action under the apparent authority theory. *See Methodist Episcopal Church*, 615 So. 2d at 572.

Coopers' home to investigate the origin. So the *very best* that State Farm could ever hope to show at trial is that *Dilley did not know* the source of the sewage when he made his coverage decisions. That should resolve this appeal: If Dilley did not know the sewage source when deciding coverage, then he could not possibly carry State Farm's burden to show that the sewage exclusion applied at that time.

And it is indisputable that State Farm gave the Coopers every indication that Dilley had authority to say what State Farm would and would not cover. Consider what a reasonable homeowner would have known at the time. Dilley reviewed the policy before he arrived at the Coopers' home. State Farm formally assigned Dilley to adjust the Coopers' claim and sent him to their home "clothe[d] . . . with the indicia of being a person who knows and may make statements on" repairs and coverages. *Methodist Episcopal Church*, 615 So. 2d at 573; *see Cooper*, 2024 U.S. Dist. LEXIS 217849, at *1. Dilley explicitly called the Coopers on State Farm's behalf. Those actions constitute apparent authority—enough to bind State Farm to Dilley's subsequent coverage decisions. And because those coverage decisions show Dilley's belief that the application of the sewage exclusion was at best unclear, we must resolve any uncertainty in favor of the Coopers and coverage.

2

State Farm also cannot overcome a genuine issue of material fact on the Coopers' equitable estoppel cause of action. Mississippi law requires apparent authority, reasonable reliance, and a detrimental change in position. *Christian Methodist Episcopal Church,* 615 So. 2d at 571–73. I have already discussed Dilley's apparent authority to bind State Farm, which is beyond cavil. As to a detrimental change in position, no one disputes that the Coopers detrimentally relied on Dilley's statements. Shirley testified she and

her husband undertook expensive repairs to their home on Dilley's say-so. For example, solely because of Dilley's statements, the Coopers removed and replaced custom kitchen cabinets at significant cost. Because the Coopers paid for repairs that they would not have otherwise, they detrimentally relied on Dilley's statements.

On the remaining element, the Coopers have raised a genuine issue of material fact as to whether they reasonably relied on Dilley's statements. According to Shirley Cooper's testimony, Dilley went from room to sewage-soaked room, telling the couple that particular flooring needed to be removed and that a certain closet should not be removed. ROA.503, 554–55. He told them that State Farm would replace their cabinets, and he told their contractor that numerous repairs would be approved. ROA.554–55, 728–29. He did not tell their contractor about any coverage limitations. ROA.729. Any reasonable homeowner would rely on Dilley's statements to conclude that State Farm would pay for the ordered work. *See Christian Methodist Episcopal Church*, 615 So. 2d at 573. And remember, the Coopers do not need to present a perfect case in every jot and tittle to prevail at this stage: any ambiguous facts are resolved in the Coopers' favor, and they only need to create a material fact dispute. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88. Shirley Cooper's testimony about Dilley's orders to undertake expensive work, Dilley's apparent authority to give those orders, and their detrimental reliance on the orders are sufficient to preclude summary judgment.

## C

The majority has two responses. The majority (1) claims that Dilley lacked the authority to bind State Farm to cover what the sewage exclusion foreclosed. Then, (2) the majority says the Coopers unreasonably relied on Dilley's directions because the Coopers knew or should have known their

policy's limits. *See Ross v. Citifinancial, Inc.*, 344 F.3d 458, 464 (5th Cir. 2003). On both points, the majority misunderstands the relevant burdens.

1

As to the scope of coverage, it is State Farm's burden to show that the sewage exclusion limited the claimed coverage. *Corban*, 20 So. 3d at 618–19. It is not the Coopers' burden to show that the exclusion does not apply. So, when Dilley said "replace this and not that," the Coopers could reasonably believe—at a minimum—that Dilley did not have enough information to invoke the sewage exclusion. (And as it turns out, the record shows Dilley did not have enough information at the time of his visit to invoke the exclusion.) So yes, it's true that Mississippi law charges the Coopers with knowledge of the sewage exclusion. But it's absolutely not true that the Coopers must presume that Dilley and State Farm would invoke an exclusion that they *did not invoke when Dilley made his coverage decisions*. When Dilley made decisions without regard to the sewage exclusion, the Coopers reasonably believed that Dilley didn't think he could carry his burden to establish the exclusion. *See ibid*; *see also Christian Methodist Episcopal Church*, 615 So. 2d at 573. Put differently, the Coopers reasonably relied on Dilley's failure to invoke a provision that he had the burden to invoke and prove with evidence. That failure, therefore, binds State Farm to cover what Dilley confirmed was covered.

The majority again misapprehends the relevant legal standards when it responds that Dilley's statements "contradict[ed] the unambiguous language of the policy." *Ante*, at 7. As an initial matter, none of the relevant statements contradicted policy language. Dilley told the Coopers to replace some things and not others. And he told the Coopers what State Farm would cover. Those statements may contradict State Farm's *litigation position*. But nary one word Dilley said comes close to contradicting one word in the

*contract itself.* That document provides that all damage to the Coopers' home would be covered, subject to exclusions. *See* ROA.346–47. Dilley's statements are consistent with his belief that no such exclusion applied. So it is a red herring to say agents cannot "contradict" insurance policies, *ante*, at 7, where Dilley never did so.

Moreover, *Leonard v. Nationwide Mutual Insurance Co.*, 499 F.3d 419 (5th Cir. 2007), is a red herring. That case holds that statements from insurance agents cannot alter contractual language. *Ante*, at 6–7. But *Leonard* considered whether statements made by an *insurance salesman* could bind the insurer to coverage exceeding that provided by the contract. *See Leonard*, 499 F.3d at 425; *see also Ford*, 513 So. 2d at 881; *Smith v. Union Nat'l. Life Ins. Co.*, 286 F. Supp. 2d 782, 783–84 (S.D. Miss. 2003). The question here is altogether different—namely, when an insurance *adjuster's* statements can bind the insurer to pay benefits. The Coopers are not trying to conjure coverage from a salesman's hot air, as in *Leonard*, but to rely on coverage they contracted for and duly paid premiums to secure. So *Leonard* is irrelevant, and no authority for Dilley's purported inability to bind State Farm.

Consider the absurd results of holding otherwise. If Dilley could not decide coverage with finality, who could? Were the Coopers supposed to ignore what Dilley said on behalf of State Farm, live in a sewage-soaked home, and wait weeks or months just to be sure that some *other* State Farm agent wouldn't come behind Dilley at some point, countermand him, and tell the Coopers to kick rocks? If State Farm had paid for the repairs Dilley authorized—believing either that the exclusion did not apply, or that litigating the question was not cost-justified—could the insurer change its mind later? What if Zimmerman discovered smoking gun evidence that the damage was excluded, but it took him a few weeks or months to uncover it?

In other words, the question here is not authority (Dilley indisputably had that) but chronology. At some point, the law recognizes that someone must have the final word. No jurisdiction in the Nation would allow State Farm to claw back benefits after paying them. *Cf.* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 5 cmt. (b)(2). And State Farm points to no authority that suggests it can countermand a coverage decision after its agent (Dilley) made it, and its insured relied on that decision. And even if State Farm could point to such authority, it certainly cannot point to authority that entitles the insurer to judgment as a matter of law.

At a bare minimum, State Farm should be forced to stand in front of a jury and explain why it can tell the Coopers to make costly repairs to their sewage-soaked home and then renege on its promises.

2

The analysis is essentially the same for the Coopers' reasonable reliance on Dilley's statements. The majority recasts those statements as though they conflicted with clear policy language, and then torches that straw man with *Leonard*'s rule that reliance conflicting with "policy language is unreasonable." *Ante*, at 7 (quoting *Leonard*, 499 F.3d at 438). As I have already noted, Dilley's orders to "replace this but not that" could not possibly have conflicted with policy language when they were made. Construing all facts in favor of the Coopers, neither they nor Dilley had information about the sewage's origin until long after Dilley toured the home.

\* \* \*

Like nearly all insureds, the Coopers had little to no choice in their policy's terms. State Farm presented its contract of adhesion. And faced with the risks of the unknown, the Coopers prudently accepted the coverage and

dutifully paid their premiums. And they trusted that, if the unthinkable happened, State Farm would be there.

And State Farm was there—until it was not. In the aftermath of a fecal catastrophe, State Farm sent an agent cloaked in full authority to adjust the Coopers' claims. With full knowledge of the policy and State Farm's obligations under it, Dilley made coverage decisions without regard to the sewage exclusion. The Coopers were entitled to rely on those decisions because it was Dilley's obligation to establish the sewage exclusion, so his failure to invoke it should have been determinative. Mississippi law estops State Farm from turning its back on its agent who stood in the Coopers' home and made decisions. Mississippi law further resolves any doubts about the sewage exclusion against State Farm (which wrote the policy in the first place) and in favor of the Coopers (who bought the policy to shift the risk of this disgusting tragedy).

I respectfully dissent.